358 So.2d 178 (1978)
Morace C. DUNCAN, Petitioner,
v.
John D. FLYNN, M.D., et al., Respondents.
No. 51299.
Supreme Court of Florida.
March 9, 1978.
Rehearing Denied May 24, 1978.
Robert Orseck of Podhurst, Orseck & Parks, Susan Goldman, Miami, and Wagner, Cunningham, Vaughan & Genders, Tampa, for petitioner.
John I. Van Voris and Charles P. Schropp of Schackleford, Farrior, Stallings & Evans and T. Paine Kelly, Jr. and Claude H. Tison, Jr. of MacFarlane, Ferguson, Allison & Kelly, Tampa, for respondents.
ENGLAND, Justice.
Morace Duncan has brought to us for review a decision of the Second District Court of Appeal[1] holding (1) that an unborn fetus is not a "person" within the meaning of Florida's former Wrongful Death Act,[2] and (2) that a child is not "born alive", for purposes of the wrongful death statute, until he or she acquires an existence separate and independent from the mother. The district court's ruling on the first point is entirely consistent with our recent decision in Stern v. Miller, 348 So.2d 303 (Fla. 1977), which resolved the question by holding that an unborn viable fetus is not a "person" within the meaning of Florida's Wrongful Death Act.[3] We adhere to our holding in Stern, and regard that decision as dispositive of the first issue.
As to the second point, Judge Scheb's opinion below has carefully and thoroughly evaluated the case law and policy *179 considerations applicable to the determination of when a child is considered to be "born alive" for purposes of the wrongful death statute. We agree with his decision, adding only that his interpretation of this statute is generally consistent with the legislature's definition of "live birth" for record-keeping purposes under the vital statistics law.[4]
We adopt as our own the opinion of the Second District Court of Appeal as to when life commences for purposes of the wrongful death statute, and accordingly discharge the writ of certiorari.
It is so ordered.
OVERTON, C.J., and BOYD and SUNDBERG, JJ., concur.
KARL, J., dissents with an opinion, with which ADKINS and HATCHETT, JJ., concur.
KARL, Justice, dissenting.
I must respectfully dissent from the majority opinion which affirms in totality the decision of the District Court of Appeal, Second District. Although I do concur, as I did in Stern v. Miller, 348 So.2d 303 (Fla. 1977), with the determination that an unborn, viable fetus is not a "person" under Florida's former wrongful death act, I cannot agree with the position of the District Court that as a matter of law, in order to constitute "live birth" so as to give rise to a cause of action for wrongful death, a child must acquire a separate and independent existence of its mother which may only be accomplished by expulsion of the child's body from its mother with evidence that the cord has been cut and the infant has an independent circulation of blood.
The facts are succinctly stated in the decision of the District Court:
"During pregnancy, Shirley J. Duncan was cared for by the defendant, Dr. Flynn, who practiced obstetrics and gynecology. She was admitted to the defendant hospital on March 20, 1972, for purpose of delivery of her fourth child. Dr. Flynn, who cared for Mrs. Duncan during her previous deliveries, induced labor. By 9:00 p.m. she was completely dilated. She was taken into the delivery room around 10:00 p.m. Minutes later, her baby's head emerged; however, the baby's shoulders were too wide to allow further passage. Two other physicians were summoned to assist, but after unsuccessful attempts at various procedures for some twenty minutes, they noted the fetal heartbeat tones had disappeared. Concluding the child could not be born alive, the physicians then directed their efforts toward Mrs. Duncan's condition. After receiving her husband's permission, they removed the baby's head. Sometime after 11:00 p.m., they proceeded to remove the remainder of the child's body by a Caesarean section. The baby's head and torso weighed 14 pounds, 8 ounces. The death certificate carried `cardio vascular failure due to or as a consequence of strangulation' as the stated cause of death."
Petitioner sued to recover for the wrongful death of his baby son who died during the process of delivery and alleged that due to respondents' negligent failure to recognize in advance that a Caesarean section would be required, the baby died during the course of childbirth. The trial court entered summary judgments for all the respondents on the wrongful death claim and explained:
"... [T]here can be no claim for the death of the unborn fetus, John Norris Duncan, and the court having determined that there are no genuine issues as to any material fact as to that claim which is a part of plaintiff's third amended complaint, that defendants are entitled to a judgment as a matter of law."
The District Court of Appeal, Second District, affirmed the judgment of the trial court.
I cannot agree with the majority that such a strict rule of law as to what is meant by "born alive" is justified but, rather, find that factual questions are involved which should be resolved by the jury.
*180 Bennett v. State, 377 P.2d 634 (Wyo. 1963), involved the prosecution and conviction of a mother for manslaughter for the killing of her newborn baby. The elements essential to establish the corpus delicti of this crime were that the infant was born alive and that its death was caused by the criminal agency of the accused. During the course of the trial proceedings, the defendant requested the trial court to give an instruction to the jury to the effect that "it is the law that an independent circulation and existence of the baby must be proved, and the fact of the baby having breathed is not conclusive proof that it was born alive." The trial court refused to give such instruction, and the defendant appealed contending this constituted error. On appeal, the Supreme Court of Wyoming determined that this refusal to give the requested instruction was proper since there is no acceptable standard for determining when an independent circulation exists. Whether the baby was born alive or not was a question of fact to be resolved by the jury, and the opinion of the autopsy physician as to the fact that the child was born alive was evidence which could be considered by the jury, concluded the Supreme Court of Wyoming. Cf. People v. Chavez, 77 Cal. App.2d 621, 176 P.2d 92 (1947).
In an annotation entitled "Proof of Live Birth in Prosecution for Killing Newborn Child," 65 A.L.R.3rd 413, it is stated that as is the case with most other factual questions, whether a child is born alive is for the jury to determine.
No absolute rule of law should be adopted which fixes the occurrence of live birth upon severance of the umbilical cord. Just as, in infanticide cases, the question as to whether the infant was born alive is a question of fact to be decided by the jury, the factual determination of live birth in wrongful death cases should likewise be resolved by the jury.
ADKINS and HATCHETT, JJ., concur.
NOTES
[1] Duncan v. Flynn, 342 So.2d 123 (Fla.2d DCA 1977).
[2] §§ 768.01-.03, Fla. Stat. (1971).
[3] Although in Stern the issue was presented in the context of our current Wrongful Death Act, §§ 768.16-.27, Fla. Stat. (1975), we expressly recognized that "[s]ince the legislature did not materially change the language of the prior section, it must be presumed that the legislature intended to carry forward into the new section the terms `person' and `minor child' as previously construed." 348 So.2d at 307. Thus, it is clear that our decision in Stern interpreting the scope of the term "person" as used in the new Wrongful Death Act applies with equal force to the identical term as it appeared in the old Wrongful Death Act.
[4] § 382.071(1), Fla. Stat. (1975), defining "fetal death", which is the converse of "live birth".