678 So.2d 1317 (1996)
James R. TANNER, Appellant,
v.
Ellie M. HARTOG, M.D., Alberto Duboy, M.D., Hartog and Duboy, P.A., and Lakeland Regional Medical Center, Inc., Appellees.
No. 95-00949.
District Court of Appeal of Florida, Second District.
June 26, 1996.
*1318 Kennan George Dandar of Dandar & Dandar, P.A., Tampa, for Appellant.
Philip D. Parrish of Stephens, Lynn, Klein & McNicholas, P.A., Miami, for Appellees Ellie M. Hartog, M.D., and Hartog and Duboy, P.A.
Thomas M. Hoeler and Jerry L. Newman of Shear, Newman, Hahn & Rosenkranz, P.A., Tampa, for Appellees Alberto Duboy, M.D., and Hartog and Duboy, P.A.
Kevin C. Knowlton and Stephen R. Senn of Peterson, Myers, Craig, Crews, Brandon, & Puterbaugh, P.A., Lakeland, for Appellee Lakeland Regional Medical Center, Inc.
PATTERSON, Judge.
This litigation ensued when Phyllis Tanner experienced a stillbirth during her forty-first week of pregnancy. Her husband, James Tanner, appeals from the dismissal of his claims with prejudice for the destruction of his living tissue, negligent stillbirth, and loss of consortium. We affirm the trial court, but certify to the Florida Supreme Court the question of whether Florida law allows a cause of action for emotional damages resulting from a stillbirth caused by the negligent act of another.
On August 1, 1990, the Tanners filed a medical malpractice action against the physicians and hospital involved in the stillbirth. Phyllis Tanner sought damages individually. James Tanner sought damages individually and as the personal representative of the child's estate. In their complaint, they alleged: "Not until December 29, 1989, did the Plaintiffs know or should have known that the actions and inactions of the Defendants fell below the standard of care recognized in the community." All defendants moved to dismiss, asserting that the medical malpractice statute of limitations had run on the face of the complaint. The trial court granted the motions with prejudice. This court affirmed in Tanner v. Hartog, 593 So.2d 249 (Fla. 2d DCA 1992) (Patterson, J., dissenting with opinion) (Tanner I).
In Tanner v. Hartog, 618 So.2d 177 (Fla. 1993) (Tanner II), the supreme court quashed Tanner I with respect to when the statute of limitation began to run and interpreted Nardone v. Reynolds, 333 So.2d 25 (Fla.1976), to ease its sometimes harsh results. Tanner II held that "the knowledge of the injury as referred to in the rule as triggering the statute of limitations means not only knowledge of the injury but also knowledge that there is a reasonable possibility that the injury was caused by medical malpractice." 618 So.2d at 181 (footnote omitted). The supreme court remanded to this court for a determination as to whether the complaint stated a cause of action under the law of this state.
We addressed that issue in Tanner v. Hartog, 630 So.2d 1136 (Fla. 2d DCA 1993) (Tanner III), review denied, 632 So.2d 1028 (Fla. 1994), and held:
1. The complaint stated a cause of action on behalf of Phyllis Tanner, citing Singleton v. Ranz, 534 So.2d 847 (Fla. 5th DCA 1988), review denied, 542 So.2d 1334 (Fla. 1989).
2. The complaint did not state a recognized cause of action for the wrongful death of the fetus, citing Stern v. Miller, 348 So.2d 303 (Fla.1977).
We then remanded to the trial court for further proceedings.
On May 26, 1994, the Tanners filed a second amended complaint in four counts. In count I, Phyllis Tanner asserted a claim for negligent stillbirth and the destruction of her living tissue. In count II, James Tanner attempted to duplicate Phyllis' claim, asserting that the fetus was also his living tissue. Counts III and IV were respective loss of consortium claims. On motion of the defendants, the trial court dismissed that complaint on September 26, 1994. In the order of dismissal, the trial court specifically rejected *1319 the concept that the fetus was James Tanner's living tissue.
On October 6, 1994, the Tanners filed a third amended complaint in five counts. Counts I and II restated Phyllis' claim and simply separated the doctors from the hospital in separate counts. In count III, James Tanner attempted to assert a claim for mental pain and anguish damages on a theory of negligent stillbirth and having witnessed the stillbirth of the fetus. He eliminated his claim that the fetus was his living tissue. Counts IV and V restated the respective loss of consortium claims. All defendants moved to dismiss. On February 22, 1995, the trial court:
dismissed count I (Phyllis) without prejudice;
denied the motion as to count II (Phyllis);
dismissed count III (James) with prejudice, citing Stern v. Miller, 348 So.2d 303 (Fla.1977);
dismissed count IV (consortium claim of Phyllis) with prejudice as being derivative of count III; and
dismissed count V (consortium claim of James) with prejudice based on the statute of limitations, finding that the claim first appeared in the second amended complaint and did not relate back to the filing date of the original complaint.
James Tanner (Tanner) appeals from both the orders of September 26, 1994, and February 22, 1995. Phyllis Tanner is not a party to this appeal.

TANNER'S LOSS OF CONSORTIUM CLAIM
Tanner first pleaded his loss of consortium claim in the second amended complaint. As a new and separate cause of action, it does not relate back to the date of the filing of the original complaint. See West Volusia Hosp. Auth. v. Jones, 668 So.2d 635 (Fla. 5th DCA 1996); Daniels v. Weiss, 385 So.2d 661 (Fla. 3d DCA 1980). Applying the test set out in Tanner II for determining when the medical malpractice statute of limitations is triggered, Tanner brought his loss of consortium claim after the statute had run. We therefore affirm the dismissal of that claim with prejudice.

TANNER'S "LIVING TISSUE OF HIS BODY" CLAIM
In the second amended complaint, Tanner sought damages for mental pain and anguish, contending that the fetus was the living tissue of his body. In so doing, he attempts to emulate Phyllis Tanner's cause of action which we approved in Tanner III. The court in Singleton v. Ranz, 534 So.2d 847, 847-48 (Fla. 5th DCA 1988), described that cause of action:
An unborn fetus is either a new and separate human being or "person," temporarily residing within the womb of the host mother, OR it is a part of the mother's body, OR both. The Florida Supreme Court has held that, in legal contemplation, an unborn fetus is not a person for the wrongful death of whom a tortfeasor is liable to its survivors for damages under the Wrongful Death Act (§ 768.19, Fla. Stat.); therefore it is living tissue of the body of the mother for the negligent or intentional tortious injury to which the mother has a legal cause of action the same as she has for a wrongful injury to any other part of her body.
(Footnotes omitted.) Tanner argues that, as the biological father of the fetus, it is his living tissue as well as that of the mother. On that assumption, he concludes that he has an equal right of recovery under Singleton. It could be argued that, having pleaded these facts, dismissal was improper and the question of whether the fetus is his living tissue would be subject to expert testimony from the scientific community. In our view, he has misconstrued the nature of the tort upon which he seeks recovery. While the fetus may be the living tissue of the mother, the tort is not committed on that living tissue but rather upon the mother's body. We explained in McGeehan v. Parke-Davis, a Division of Warner-Lambert Co., 573 So.2d 376, 377 (Fla. 2d DCA), review denied, 583 So.2d 1036 (Fla.1991), that "[a]s Singleton recognized, the wrongfully caused loss of a fetus is a legally cognizable bodily injury to the woman whose body suffers the loss." While Tanner *1320 may argue that the fetus is his living tissue, he cannot argue that it is part of his body; thus, we affirm the dismissal of this claim with prejudice.

TANNER'S CLAIM FOR "NEGLIGENT STILLBIRTH"
In count III of the third amended complaint, Tanner attempts to allege a cause of action for mental pain and anguish, unaccompanied by impact or physical injury, resulting from the negligent care and treatment of his wife, which resulted in the stillbirth of his child.
Several jurisdictions, which like Florida do not recognize a fetus as a "person" for the purpose of the Wrongful Death Act, recognize a cause of action on behalf of both parents for medical malpractice which causes a stillbirth. In Giardina v. Bennett, 111 N.J. 412, 545 A.2d 139 (1988), Mrs. Bennett went into labor when she was three weeks past her delivery date, was admitted to the hospital, and her baby was stillborn. She and her husband sued her physician, contending that the stillbirth was the result of his negligent care and treatment during her pregnancy. In recognizing their cause of action for emotional damages, the Supreme Court of New Jersey said:
We conclude that the medical malpractice causing an infant stillbirth constitutes a tort against the parents, entailing the direct infliction of injury, their emotional distress and mental suffering, for which they are entitled to recover compensatory damages.
. . . .
Medical malpractice causing a stillbirth results in infliction of a direct injury to the mother as well as to her unborn child. Even without any permanent physical harm, the mother suffers severe and genuine injuries in the form of emotional distress and mental anguish occasioned by her baby's stillbirth. This suffering is experienced, also, by the father of the infant. Thus, in a case such as this, the injury suffered by the mother and the father on the stillbirth of their eagerly expected first child is palpable and predictable.
545 A.2d at 139-40. The Giardina court was "satisfied that our common law has evolved to a point that would recognize a valid cause of action for the emotional injuries suffered by parents in this kind of a case." 545 A.2d at 142. Accord Carey v. Lovett, 132 N.J. 44, 622 A.2d 1279 (1993). See also Abdallah v. Callender, 1 F.3d 141 (3d Cir.1993) (father has claim for severe emotional and mental distress as a result of stillbirth); Johnson v. Ruark Obstetrics & Gynecology Assocs., 327 N.C. 283, 395 S.E.2d 85 (1990); Molien v. Kaiser Found. Hosps., 27 Cal.3d 916, 167 Cal.Rptr. 831, 616 P.2d 813 (1980); Sesma v. Cueto, 129 Cal.App.3d 108, 181 Cal.Rptr. 12 (1982).
The impediment to recognizing a cause of action for negligent stillbirth in this jurisdiction is the impact rule. The impact rule requires that "before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact." Reynolds v. State Farm Mut. Auto. Ins. Co., 611 So.2d 1294, 1296 (Fla. 4th DCA 1992), review denied, 623 So.2d 494 (Fla.1993). Our courts, however, have carved out several exceptions to the rule. In Champion v. Gray, 478 So.2d 17, 18 (Fla.1985), the supreme court recognized a cause of action for negligent infliction of emotional distress under limited circumstances when there is "death or significant discernible physical injury, when caused by psychological trauma resulting from a negligent injury imposed upon a close family member within the sensory perception of the physically injured person."
Later, in Kush v. Lloyd, 616 So.2d 415 (Fla.1992), the court recognized the tort of "wrongful birth." In Kush, Mrs. Lloyd gave birth to a deformed child in 1976. She and her husband were referred for genetic testing. They were then prematurely advised that the "impairment was an accident of nature, not a genetic defect." 616 So.2d at 417. In 1985, Mrs. Lloyd gave birth to another child suffering from the same deformities as the first child. Further tests revealed that both children suffered from the same genetic defect which they inherited from the mother. The Lloyds brought an action in part for *1321 "wrongful birth" which sought damages for the prospective costs of care of their deformed child and their individual emotional distress. In approving both classes of damages, the court explained why the impact rule should not apply:
[W]e are not certain that the impact doctrine ever was intended to be applied to a tort such as wrongful birth....
Similarly, the impact doctrine also generally is inapplicable to recognized torts in which damages often are predominately emotional, such as defamation or invasion of privacy. Restatement (Second) of Torts §§ 569, 570, 652H cmt. b (1977). This conclusion is entirely consistent with existing Florida law. For example, it is well settled that mental suffering constitutes recoverable damages in cases of negligent defamation, e.g., Miami Herald Publishing Co. v. Brown, 66 So.2d 679, 681 (Fla.1953), or invasion of privacy. See Cason v. Baskin, 155 Fla. 198, 20 So.2d 243 (1944). Accord Restatement (Second) of Torts §§ 569, 570, 652H, cmt. b (1977). If emotional damages are ascertainable in these contexts, then they also are ascertainable here.
There can be little doubt that emotional injury is more likely to occur when negligent medical advice leads parents to give birth to a severely impaired child than if someone wrongfully calls them liars, accuses them of unchastity, or subjects them to any other similar defamation. A defamation may have little effect, may not be believed, might be ignored, or could be reversed by trial publicity. But the fact of a child's serious congenital deformity may have a profound effect, cannot be ignored, and at least in this case is irreversible. Indeed, these parents went to considerable lengths to avoid the precise injury they now have suffered. We conclude that public policy requires that the impact doctrine not be applied within the context of wrongful birth claims. Accordingly, in this respect the result reached by the district court is affirmed.
616 So.2d at 422-23 (footnotes omitted).
While not an explicit exception, the tort recognized in Singleton v. Ranz, 534 So.2d 847 (Fla. 5th DCA 1988), is a clever mechanism to satisfy the impact rule using the concept of damage to the living tissue of the mother. A reading of Singleton and Kush together could lead us to conclude that our jurisdiction is ripe for the recognition of the tort of "negligent stillbirth" when the only damage sustained is emotional. If a mother is permitted to make such a claim, then logic and reason tell us that a father who has sustained identical damages from the same negligent act should not be precluded from recovery by the impact rule. The same reliability of emotional damage as described in Kush could appear to be present, on behalf of both parents, in a case of "negligent stillbirth," assuming a close relationship of the father to the mother and the unborn child.
However, we hesitate to reach such a conclusion because of the more recent decision in R.J. v. Humana of Florida, Inc., 652 So.2d 360 (Fla.1995). R.J.'s complaint alleged that in 1989 he obtained a blood test through Humana which, he was told, indicated that he was HIV positive. He was then treated for that condition until a subsequent blood test nineteen months later revealed that he was not infected with the HIV virus. He contended that his belief that he had the HIV virus caused "him to suffer bodily injury including hypertension, pain and suffering, mental anguish, loss of capacity for the enjoyment of life, and the reasonable expense of medical care and attention." 652 So.2d at 362. The trial court dismissed the action with prejudice based on the impact rule and the Fifth District Court of Appeal affirmed and certified the question to the supreme court. In affirming, the court explained why the impact rule precluded recovery:
We reaffirm today our conclusion that the impact rule continues to serve its purpose of assuring the validity of claims for emotional or psychic damages, and find that the impact rule should remain part of the law of this state. Consequently, we reject R.J.'s request that we abolish the impact rule. We also reject R.J.'s argument that, as a matter of public policy, this Court should create a limited exception to the impact rule for a negligent HIV diagnosis.

*1322 Without question, allowing compensation for emotional distress in the absence of a physical injury under the circumstances of this case would have a substantial impact on many aspects of medical care, including the cost of providing that care to the public. Were we to create such an exception, we would, of necessity, also be allowing a claim for emotional distress for any misdiagnosis made from negligent medical testing. We could not limit an exception for negligent misdiagnosis to cases specifically involving the HIV virus while excluding terminal illnesses. Moreover, it would be exceedingly difficult to limit speculative claims for damages in litigation under such an exception. Given that the underlying policy reasons for the impact rule still exist, we find that no special exception is justified under the circumstances of this case.
652 So.2d at 363-64. In our view, Tanner's claim for "negligent stillbirth," an area our highest court has yet to address, falls somewhere between the rationale of Kush, the wrongful birth case, and R.J., the negligent HIV misdiagnosis case.
In Kush, the parents had ascertainable damages for the child's extraordinary medical expenses. The court characterized the emotional damages as "an additional parasitic consequence" to the freestanding tort of wrongful birth. 616 So.2d at 422. Here, Tanner has no damages such as the ascertainable medical expenses in Kush. Yet, in Kush, the court noted that the parents' emotional injuries arising from the wrongful birth of a deformed child are natural and that the injury is far greater than in other torts having primarily emotional damages, such as defamation and invasion of privacy, to which the impact rule does not apply. Like the birth of a deformed child, a stillbirth naturally results in emotional trauma to the parents; thus, the impact rule's purpose of preventing fraudulent claims should be satisfied. In R.J., the court was concerned that an exception to the impact rule for negligent medical misdiagnosis would make it difficult to limit speculative claims. This case can be distinguished from R.J. in that a negligent stillbirth results in irreparable trauma and thus has some guarantee of genuineness.
However, in an abundance of caution, we affirm the dismissal of count III of the third amended complaint and certify to the supreme court as of great public importance the following question:
DOES THE LAW OF THIS STATE SUPPORT A CAUSE OF ACTION FOR EMOTIONAL DAMAGES OF AN EXPECTANT FATHER AND MOTHER RESULTING FROM A STILLBIRTH CAUSED BY THE NEGLIGENT ACT OF ANOTHER?
THREADGILL, C.J., and WHATLEY, J., concur.