696 So.2d 705 (1997)
James R. TANNER, Petitioner,
v.
Ellie M. HARTOG, etc., et al., Respondents.
No. 88544.
Supreme Court of Florida.
May 8, 1997.
Rehearing Denied July 9, 1997.
*706 Kennan George Dandar of Dandar & Dandar, P.A., Tampa, for Petitioner.
Thomas M. Hoeler and Jerry L. Newman of Shear, Newman, Hahn & Rosenkranz, P.A., Tampa, and Kevin C. Knowlton and Stephen R. Senn of Peterson & Myers, P.A., Lakeland, for Respondents.
Lee D. Gunn IV of Gunn, Ogden & Sullivan, P.A., Tampa, for Florida Defense Lawyers Association, Amicus Curiae.
GRIMES, Justice.
We review Tanner v. Hartog, 678 So.2d 1317 (Fla. 2d DCA 1996),[1] in which the court certified a question as one of great public importance. We have jurisdiction under article V, section 3(b)(4) of the Florida Constitution.
The genesis of this case occurred when Phyllis Tanner experienced a stillbirth during her forty-first week of pregnancy. She and her husband, James, brought suit against Drs. Hartog and Duboy and Lakeland Regional Medical Center, alleging that their negligence caused the stillbirth. In a prior opinion,[2] the district court of appeal affirmed that portion of the trial judge's order finding that the complaint failed to state a cause of action for the wrongful death of the fetus. However, the court reversed the portion of the judge's order which had dismissed Phyllis's claim for personal injury. Thereafter, through the filing of amended complaints, James added several counts, including a claim for mental pain and anguish unaccompanied by impact or physical injury resulting from the negligence which caused the stillbirth. When the judge denied these claims, James appealed to the court below. The court affirmed the judge's order but certified the following question:
DOES THE LAW OF THIS STATE SUPPORT A CAUSE OF ACTION FOR EMOTIONAL DAMAGES OF AN EXPECTANT FATHER AND MOTHER RESULTING FROM A STILLBIRTH CAUSED BY THE NEGLIGENT ACT OF ANOTHER?
Tanner, 678 So.2d at 1322.[3]
At the outset, we note that this Court has repeatedly held that there is no cause of action under Florida's Wrongful Death Act for the death of a stillborn fetus. Young v. St. Vincent's Medical Center, Inc., 673 So.2d 482 (Fla.1996); Hernandez v. Garwood, 390 So.2d 357 (Fla.1980); Duncan v. Flynn, 358 So.2d 178 (Fla.1978); Stern v. Miller, 348 So.2d 303 (Fla.1977). The rationale for these decisions is that a fetus is not a "person" within the meaning of the statute.
The basis upon which the district court of appeal had earlier approved Phyllis's personal injury claim was that the complaint alleged physical injury to her body. The court relied upon the opinion in Singleton v. Ranz, 534 So.2d 847 (Fla. 5th DCA 1988), which stated:
An unborn fetus is either a new and separate human being or "person," temporarily residing within the womb of the host mother, OR it is a part of the mother's body, OR both. The Florida Supreme Court has held that, in legal contemplation, an unborn fetus is not a person for the wrongful death of whom a tortfeasor is liable to its survivors for damages under the Wrongful Death Act (§ 768.19, Fla. Stat.); therefore, it is living tissue of the body of the mother for the negligent or intentional tortious injury to which the mother has a legal cause of action the same as she has for a wrongful injury to any other part of her body.
Id. at 847-48 (footnote omitted). Accord McGeehan v. Parke-Davis, 573 So.2d 376 (Fla. 2d DCA 1991). Both the Singleton and McGeehan opinions distinguished the case of Abdelaziz v. A.M.I.S.U.B. of Florida, Inc., 515 So.2d 269 (Fla. 3d DCA 1987), which had rejected a personal injury claim for negligently causing the stillbirth of a child because *707 it was conceded that the mother sustained no physical injuries. The Singleton and McGeehan courts each reasoned that in their cases it could not be clearly determined under the pleadings whether the mother had sustained physical injuries to herself. In its current opinion, the court below cited several cases for the position that Florida was "ripe for the recognition of the tort of `negligent stillbirth' when the only damage sustained is emotional," but was reluctant to take that step on its own. Tanner, 678 So.2d at 1321.
Claims for negligently caused stillbirth have vexed the courts of our nation for many years. The majority of jurisdictions uphold such claims under their wrongful death statutes. See T.A. Borowski, Jr., No Liability for the Wrongful Death of Unborn ChildrenThe Florida Legislature Refuses to Protect the Unborn, 16 Fla.St.U.L.Rev. 835, 846 n. 76 (1988). Others have sustained them as direct actions by the parents for the negligent infliction of emotional distress. For example, in Giardina v. Bennett, 111 N.J. 412, 545 A.2d 139 (1988), the New Jersey Supreme Court held that the parents of a stillborn child, as in Florida, had no cause of action under the New Jersey Wrongful Death Act. At the same time, however, the court also held that medical malpractice causing an infant's stillbirth constituted a tort against the parents for which they were entitled to recover damages for their emotional distress and mental suffering. The court reasoned:
Medical malpractice causing a stillbirth results in infliction of a direct injury to the mother as well as to her unborn child. Even without any permanent physical harm, the mother suffers severe and genuine injuries in the form of emotional distress and mental anguish occasioned by her baby's stillbirth. This suffering is experienced, also, by the father of the infant. Thus, in a case such as this, the injury suffered by the mother and father on the stillbirth of their eagerly expected first child is palpable and predictable.
Id. 545 A.2d at 140.
In Sesma v. Cueto, 129 Cal.App.3d 108, 181 Cal.Rptr. 12 (1982), the California appellate court held that both the father and mother may recover for negligent infliction of emotional distress resulting from the birth of a stillborn child even in the absence of accompanying physical injury or presence of the father at the birth. The fact that a recovery could not be obtained under the California wrongful death statute was not determinative of the issue. In North Carolina, the supreme court approved the parents' claim for negligent stillbirth without the necessity of proving a physical injury to the mother or a physical manifestation of emotional distress, even though that state also recognizes a claim arising from the birth of a stillborn child under its wrongful death statute. Johnson v. Ruark Obstetrics & Gynecology Associates, P.A., 327 N.C. 283, 395 S.E.2d 85 (1990).
The primary obstacle in Florida to a cause of action for "negligent stillbirth" is the application of the impact rule. Generally stated, the impact rule requires that before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional stress suffered must flow from physical injuries the plaintiff sustained in an impact. R.J. v. Humana of Florida, Inc., 652 So.2d 360, 362 (Fla.1995). The Singleton and McGeehan courts, as well as the court below, paid lip service to the rule by remanding for a determination of whether the mother suffered a physical injury. However, if these courts intend to hold that the physical injury to the mother may consist solely of an injury to the baby in the mother's womb, i.e., "the living tissue of the mother," we agree with the court below that this rationale is simply a "clever mechanism to satisfy the impact rule."[4] 678 So.2d at 1321. Instead of this round-about approach, we believe that the issue should be addressed forthrightly.
*708 This Court's prior decision in Kush v. Lloyd, 616 So.2d 415 (Fla.1992), provides some guidance in resolving the pending issue. Ms. Lloyd gave birth to a deformed child. When she and her husband were subsequently referred for genetic testing, they were prematurely advised that the prior birth was not the result of a genetic defect. She later gave birth to another child suffering from the same deformity, and further tests revealed that both children suffered from the same genetic defect which they had inherited from the mother. The Lloyds brought an action seeking damages for the prospective costs of the care of their deformed child and their individual emotional distress. In approving the claim for wrongful birth, we addressed the application of the impact rule as follows:
However, we are not certain that the impact doctrine ever was intended to be applied to a tort such as wrongful birth. Prosser and Keeton state that the impact doctrine should not be applied where emotional damages are an additional "parasitic" consequence of conduct that itself is a freestanding tort apart from any emotional injury. W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 54, at 361-65 (5th ed. 1984). The American Law Institute is in general accord. Restatement (Second) of Torts § 47 & § 47 cmt. b (1965). Obviously, the Lloyds have a claim for wrongful birth even if no emotional injuries had been alleged.
Similarly, the impact doctrine also generally is inapplicable to recognized torts in which damages often are predominately emotional, such as defamation or invasion of privacy. Restatement (Second) of Torts §§ 569, 570, 652H cmt. b (1977). This conclusion is entirely consistent with existing Florida law. For example, it is well settled that mental suffering constitutes recoverable damages in cases of negligent defamation, e.g., Miami Herald Publishing Co. v. Brown, 66 So.2d 679, 681 (Fla.1953), or invasion of privacy. See Cason v. Baskin, 155 Fla. 198, 20 So.2d 243 (1944). Accord Restatement (Second) of Torts §§ 569, 570, 652H, cmt. b (1977). If emotional damages are ascertainable in these contexts, then they also are ascertainable here.
Kush, 616 So.2d at 422.
We recognize that there is a legitimate legal argument which can be directed against any particular theory upon which a recovery in the instant case might be predicated and that the law does not provide a remedy for every wrong. Yet, it is difficult to justify the outright denial of a claim for the mental pain and anguish which is so likely to be experienced by parents as a result of the birth of a stillborn child caused by the negligence of another. As a natural evolution of the common law, we conclude, as in Kush, that public policy dictates that an action by the parents for negligent stillbirth should be recognized in Florida.
At the same time, we do not intend to depreciate the value of the impact rule. As recently as two years ago in R.J. v. Humana, this Court stated:
We reaffirm today our conclusion that the impact rule continues to serve its purpose of assuring the validity of claims for emotional or psychic damages, and find that the impact rule should remain part of the law of this state.
652 So.2d at 363. We hold only that the impact rule is inapplicable to this narrow class of cases.[5]
Likewise, we do not view our decision as a circumvention of the wrongful death statute. A suit for negligent stillbirth is a direct common law action by the parents which is different in kind from a wrongful death action. The former is directed toward the death of a fetus while the latter is applicable to the death of a living person. As contrasted to the damages recoverable by *709 parents under the wrongful death statute, the damages recoverable in an action for negligent stillbirth would be limited to mental pain and anguish and medical expenses incurred incident to the pregnancy.
We do not address James's other claims. We disapprove Abdelaziz as well as Henderson v. North, 545 So.2d 486 (Fla. 1st DCA 1989), which adopted the principle of Abdelaziz, to the extent that they disapproved a cause of action for negligent stillbirth. We conclude that the rationale expressed in Singleton and McGeehan is subsumed within the cause of action recognized by our decision in this case. We quash the decision below only to the extent that it affirmed the dismissal of James's claim for negligent stillbirth.[6]
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] This case was previously before this Court on an unrelated issue. Tanner v. Hartog, 618 So.2d 177 (Fla.1993).
[2] Tanner v. Hartog, 630 So.2d 1136 (Fla. 2d DCA 1993).
[3] Presumably, because the court's prior opinion had approved Phyllis's claim for personal injury, the court phrased the question to include the mother as well as the father, even though the mother was not a party to the appeal.
[4] At the least, the "tissue" theory raises some analytical questions. The birth process involves the loss of the mother's tissue regardless of whether the birth results in a stillborn or a live child. Therefore, if the mother's claim consists only of the loss of her tissue, is she entitled to pursue a claim for the loss of tissue she intended to lose in the first place? Further, since her claim is limited to injury to her own tissue, does it follow that her damages would include the mental pain and anguish caused by the loss of a child?
[5] As Justice Alderman observed in his concurring opinion in Champion v. Gray, 478 So.2d 17, 21-22 (Fla.1985) (Alderman, J., concurring specially):

We today modify to a limited extent our previous holdings on the impact doctrine. In doing so, however, we are unable to establish a rigid hard and fast rule that would set the parameters for recovery for psychic trauma in every case that may arise. The outer limits of this cause of action will be established by the courts of this state in the traditional manner of the common law on a case-by-case basis.
[6] Because we hold the impact rule inapplicable, James's presence at the birth of the stillborn child would not be a prerequisite to recovery.