765 So.2d 975 (2000)
Alexander KAMMER, M.D. and Accent Women's Health Center, a Florida corporation, Appellants,
v.
Toni Mooney HURLEY and George S. Hurley, Appellees.
No. 4D99-891.
District Court of Appeal of Florida, Fourth District.
September 6, 2000.
*976 Daniel S. Pearson and Lenore C. Smith of Holland & Knight LLP, Miami, for appellants.
Julie H. Littky-Rubin of Lytal, Reiter, Clark, Fountain & Williams, LLP, West Palm Beach, for appellees.
SCOLA, ROBERT N., Jr., Associate Judge.
This is an appeal from a jury verdict which found that the defendants caused a negligent stillbirth and which awarded the plaintiffs, parents of the stillborn child, damages for their mental pain and anguish and for medical expenses incurred incident to the pregnancy. We affirm.
Plaintiffs, Mr. and Mrs. George Hurley, married each other when they were both in their forties. Each wanted desperately to have a child and they tried to conceive a child even before the marriage. After Mrs. Hurley became pregnant she was very conscientious about her pregnancy. She took good care of herself and her child-to-be by eating well, took pre-natal vitamins, and followed her doctor's instructions. All indications were that the pregnancy was going very well and that the fetus was developing normally. Ultrasound and amniocentesis tests were performed and it was learned that they were going to have a son. Excited about this prospect, the Hurleys picked a name for the child, held a huge baby shower attended by many friends and family, and fixed a *977 room in the house with baby equipment and decorations.
Mrs. Hurley went into full-term labor. The defendant-doctor arrived when Mrs. Hurley began pushing to deliver the baby. When she was not able to give birth through the birth canal, Mrs. Hurley requested that the defendant-doctor perform a C-section. The defendant-doctor ridiculed Mrs. Hurley by saying she was not pushing hard enough, she was a coward running from the pain, she was lazy, and she would never be a good mother because she could not push out the baby. There was also testimony that the defendant-doctor was too busy flirting with the nurse to pay proper attention to Mrs. Hurley. Ultimately, just moments before delivery of this full-term fetus, the defendant misused a vacuum extractor and crushed the skull of the fetus, resulting in a stillbirth.
Plaintiffs then brought a lawsuit alleging negligent stillbirth and seeking damages for their mental pain and anguish and for medical expenses incurred incident to the pregnancy. A jury awarded $22,148 for past medical expenses, $4,455 for past expenses of a therapist, $10,500 for the future expenses of a therapist, and $2.5 million to each plaintiff for their mental pain and anguish.
The defendants' first claim is that the court erred by allowing this negligent stillbirth case to be tried as a wrongful death action. In Tanner v. Hartog, 696 So.2d 705, 708 (Fla.1997), the Florida Supreme Court held that parents of a stillborn child could recover damages for mental pain and anguish caused by the negligence of another, even in the absence of evidence that the stillbirth caused any physical impact or injury to the mother. While reaffirming the legitimacy and value of the "impact rule,"[1] it carved out a narrow exception in cases of negligent still-birth:
[w]e recognize that there is a legitimate legal argument which can be directed against any particular theory upon which a recovery in the instant case might be predicated and that the law does not provide a remedy for every wrong. Yet, it is difficult to justify the outright denial of a claim for the mental pain and anguish which is so likely to be experienced by parents as a result of the birth of a stillborn child caused by the negligence of another. As a natural evolution of the common law, we conclude, as in Kush [v. Lloyd, 616 So.2d 415 (Fla.1992)], that public policy dictates that an action by the parents for negligent stillbirth should be recognized in Florida.....
... We hold only that the impact rule is inapplicable to this narrow class of cases.
696 So.2d at 708.
Tanner also quoted favorably from Giardina v. Bennett, 111 N.J. 412, 545 A.2d 139, 140 (1988), in which the New Jersey Supreme Court addressed the nature of parents' anguish in cases such as these:
[m]edical malpractice causing a stillbirth results in infliction of a direct injury to the mother as well as to her unborn child. Even without any permanent physical harm, the mother suffers severe and genuine injuries in the form of emotional distress and mental anguish occasioned by her baby's stillbirth. This suffering is experienced, also, by the father of the infant. Thus, in a case such as this, the injury suffered by the mother and father on the stillbirth of their eagerly expected first child is palpable and predictable. *978 Tanner, 696 So.2d at 707 (emphasis added).
In this case, the "eagerly expected first child" of Mr. and Mrs. Hurley was stillborn due to the negligence of the defendants. The Hurleys' suit for negligent stillbirth sought damages for their mental pain and anguish and for the medical expenses incurred incident to the pregnancy of their stillborn child. This is precisely the type of action envisioned and damages approved by the supreme court in Tanner. Tanner created a common law action "which is different in kind from a wrongful death action." 696 So.2d at 708. We believe the only difference between the causes of actions is that the statutory damages under the Wrongful Death Act are not available to plaintiffs in a wrongful stillbirth action.
Defendants claim that the trial court erred by allowing the Hurleys and their counsel to refer to the stillborn child as "their son," "their child" or as "George Hurley, Jr." They argue that these references converted the trial from a case of negligent stillbirth to a case of wrongful death of a fetus, which is not recognized in Florida. They further submit that the verdict was excessive for a stillbirth of a child case and is further evidence that this case was tried as a wrongful death action. We disagree.
The law correctly recognizes a legal distinction between a "fetus" in the womb, even a split second before delivery, and a "person" who takes a breath one second after delivery. See Young v. St. Vincent's Med. Ctr., Inc., 673 So.2d 482, 483 (Fla. 1996); Hernandez v. Garwood, 390 So.2d 357, 358-59 (Fla.1980); Duncan v. Flynn, 358 So.2d 178, 178 (Fla.1978); Stern v. Miller, 348 So.2d 303, 307 (Fla.1977). However, the emotional devastation and mental anguish suffered by parents due to the loss of their "eagerly anticipated first child" is no less palpable when the negligent act destroys a "fetus" the instant before delivery rather than a "person" the instant after the delivery. To adopt the reading of Tanner proposed by the defendants would eviscerate the very cause of action which Tanner approved.
Thus, the court did not err in allowing the plaintiffs and their counsel to refer to the fetus as "their son," "their child" or as "George Hurley, Jr." The mental state of the parents was at issue in this trial. How they viewed their "fetus" was thus evidence of, and, therefore, directly related to, the depth of their mental pain and anguish. Indeed, in Tanner itself, the supreme court makes eleven references to terms such as "stillborn child," "stillbirth of a child," "unborn child," "baby's stillbirth," "baby in the womb" and "infant's stillbirth." 696 So.2d at 706-708 (emphasis added). The court's own usage of these terms reflects the common linguistic relationship of these terms. Consequently, it was certainly not error for the trial court to refuse to require the parents of this unborn child to be more precise in their terminology than was our supreme court.
The trial court also correctly permitted testimony that the Hurleys were truly, eagerly anticipating the birth of their first child. Their emotional commitment to the fetus before the stillbirth was relevant to establish the legitimacy of the mental pain and anguish they claimed after the stillbirth. It was also not error to allow testimony that Mrs. Hurley was unable to conceive any other children after this incident. There was no claim that the defendants' actions were in any way responsible for her inability to conceive, but this evidence was germane to the issue of damages for the mental pain and anguish caused by the loss of the Hurleys' only child.
The defendants further claim that the jury's award for damages was excessive. In light of the horrible way in which this full-term, "unborn child" was killed moments before delivery, and the overwhelming evidence of the mental pain and anguish suffered by the parents, we believe that the verdict was not excessive.
*979 We do agree with the defendants, however, that a remark by counsel for plaintiffs during closing argument, in which he questioned whether the defendant had a "license to kill," was improper. However, there was no objection. Thus, the error was not preserved.
We also find that it was error for the court to place the name of "George Hurley, Jr." on the verdict form and in the jury instructions. However, under the facts of this case, we believe a different result would not have been reached had the name not been included. As such, the error was harmless. See Centex-Rooney Constr. Co. v. Martin County, 706 So.2d 20, 26 (Fla. 4th DCA 1997); Pascale v. Federal Express Corp., 656 So.2d 1351, 1353-54 (Fla. 4th DCA 1995); Aristek Communities, Inc. v. Fuller, 453 So.2d 547, 548 (Fla. 4th DCA 1984); § 59.041, Fla. Stat. (1999) (judgment should not be reversed unless, after examination of entire case it appears that error complained of resulted in a miscarriage of justice).
Affirmed.
TAYLOR, J., concurs.
KLEIN, J., dissents with opinion.
KLEIN, J., dissenting.
Although I agree that the plaintiffs in this case have suffered greatly, and apparently needlessly, I cannot reconcile the manner in which this case was tried with Tanner v. Hartog, 696 So.2d 705, 708-09 (Fla.1997), in which our supreme court explained:
[W]e do not view our decision as a circumvention of the wrongful death statute. A suit for negligent stillbirth is a direct common law action by the parents which is different in kind from a wrongful death action. The former is directed toward the death of a fetus while the latter is applicable to the death of a living person. As contrasted to the damages recoverable by parents under the wrongful death statute, the damages recoverable in an action for negligent stillbirth would be limited to mental pain and anguish and medical expenses incurred incident to the pregnancy. [emphasis added.]
At the beginning of the trial, defense counsel objected to the case being tried as a wrongful death action, but the court overruled defendant's objection, and allowed the case to be tried, so far as the mental pain and suffering was concerned, as if it were a wrongful death action.
Plaintiffs' closing argument included, for example, the following comments:
[Toni and George] would now have almost... a two-year old, that son would be going through the terrible twos.
* * *
Toni never had a chance to breastfeed her child and George never read him a bedtime story.
* * *
So how much is the loss of their son worth to them?
* * *
Doesn't the bible tell us that this is the ultimate act? A son, God asked Abraham to give up his son. And how much is that worth to Toni and George?
* * *
There is no greater pain than the loss of a child. Dr. Schulman ... told you there is no greater loss in this world than the parents' loss of a child.
* * *
When do you think Toni will miss her son the most? First day of school? When she thinks about the carnival that she could have taken him to? When she thinks about the books she could have read to him when he went to sleep? Day after day, these tragedies will come into her life. These will be things that *980 she thinks about. There is no way to recover after something like this. The list is endless of the things that they no longer have because of the loss of their son.
* * *
We talked about a room, a room, Ladies and Gentleman, that still sits in their house almost two years later, a room made for this little boy, George Wyatt, and there's this beautiful statue of a mother protecting her child. And in it lays his ashes. That is what Toni and George hold on to everyday of their lives.
* * *
What are some of the things George will miss the most? His last words to you were he'll never have his 260-pound linebacker. He won't go to Little League games with his son, he won't get to go camping. All the things that he and Toni talked about doing will never come to be.
* * *
[W]hen you consider pain ... you must consider the life that they wanted to share with their child.
Whether the trial court erred in that ruling, which set the stage for opening statement, the testimony of the plaintiffs, closing argument, the jury instructions, and the verdict forms, turns on what our supreme court meant in Tanner when it limited damages to "mental pain and anguish and medical expenses incurred incident to the pregnancy." Tanner, 696 So.2d at 708-09. Plaintiffs argue that "incident to the pregnancy" only refers to medical expenses, and not to mental pain and anguish. They then reason that there is no distinction between the intangible damages recoverable for negligent still-birth and the intangible damages for the wrongful death of a child.
If the plaintiffs are correct, then the only difference between child wrongful death actions and negligent stillbirth actions would be that in a wrongful death action medical and funeral expenses would be recoverable, and in a negligent stillbirth action medical expenses incident to the pregnancy would be recoverable.[2]
In light of the Tanner court's limiting damages to those incurred incident to the pregnancy, I believe that the trial court erred in allowing this case to be tried as if the pain and anguish damages were the same as in a child wrongful death action. I do not think the Tanner court intended for plaintiffs to be able to recover for all of the things they would have enjoyed during the life of the child, such as breastfeeding, baseball and camping. If that was not the intent of Tanner, then the amount of this verdict would indicate that the error was prejudicial and would require a new trial.
When our supreme court decided to allow recovery for negligent stillbirth, it made the following observation:
The outer limits of this cause of action will be established by the courts of this state in the traditional manner of the common law on a case-by-case basis.
Tanner, 696 So.2d at 708 n. 5, quoting from Champion v. Gray, 478 So.2d 17, 21-22 (Fla.1985)(Alderman, J., concurring specially). I doubt that the Tanner court contemplated this result.
NOTES
[1] The "impact rule" provides that "`before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact.'" See R.J. v. Humana of Florida, Inc., 652 So.2d 360, 362 (Fla.1995)(quoting Reynolds v. State Farm Mut. Auto. Ins. Co., 611 So.2d 1294, 1296 (Fla. 4th DCA 1992)).
[2] Plaintiffs suggest another difference, that in a wrongful death action net accumulations are recoverable; however, they are not recoverable for the death of a minor child. § 768.21(6)(a)2, Fla. Stat. (1997).