798 So.2d 767 (2001)
Julianne M. HOLT, Office of the Public Defender, Appellant,
v.
John C. ROWELL, Appellee.
No. 2D00-2685.
District Court of Appeal of Florida, Second District.
August 22, 2001.
Bruce A. Walkley of Walkley & Walkley, Tampa, for Appellant.
*768 James W. Holliday of Prugh & Associates, Tampa, for Appellee.
VILLANTI, CRAIG C., Associate Judge.
Julianne M. Holt, on behalf of the Office of the Public Defender of the Thirteenth Judicial Circuit of Hillsborough County, appeals a judgment in the amount of $17,004 entered in favor of John C. Rowell in a legal malpractice action. We affirm that portion of the judgment finding Ms. Holt's employees negligent in their representation of Mr. Rowell and awarding him damages for his lost earning capacity. We reverse, however, that portion of the judgment awarding Mr. Rowell "loss of liberty" damages based upon the emotional or psychological harm caused when the malpractice resulted in his extended incarceration. We conclude that the impact rule, as currently applied in Florida, prohibits Mr. Rowell from recovering emotional or psychological damages, because Mr. Rowell suffered no impact and no physical injury resulting from the emotional or psychological harm. Because the impact rule has not been previously applied in this context in Florida, and because we question whether it should be applied to bar the recovery of loss of liberty damages when a criminal defense attorney's negligence results in a client's unnecessary incarceration, we certify to the Supreme Court of Florida a question of great public importance regarding whether the impact rule should apply to prohibit the recovery of noneconomic damages in a legal malpractice claim when the negligence of a criminal defense attorney results in a loss of liberty and resulting emotional or psychological harm.
In May 1995, John Rowell sold two firearms to a pawnshop. Based upon these sales, Mr. Rowell was arrested on July 6, 1995, in Marion County, Florida, for two counts of felon in possession of a firearm. In fact, Mr. Rowell was innocent of these charges. Although Mr. Rowell had been convicted of a felony in 1966 when he was 22 years of age, he had received a restoration of his civil rights on June 18, 1975. Mr. Rowell was unable to convince the arresting officers that he was innocent of the crimes charged. He was transported to the Hillsborough County Jail, where he remained overnight until his first appearance hearing scheduled for the following morning, July 7, 1995.
In the Thirteenth Judicial Circuit, preliminary presentation hearings are often performed via closed circuit television. The defendants are physically located at the jail, and an assistant public defender is assigned to this location. A second assistant public defender is present in the courtroom with the presiding judge and the assistant state attorney.
At Mr. Rowell's preliminary presentation hearing on the morning of Friday, July 7, an assistant public defender at the jail spoke with Mr. Rowell, and Mr. Rowell signed an affidavit of indigency and an invocation of rights, thus establishing an attorney-client relationship with the Office of the Public Defender. Mr. Rowell had in his possession a document indicating that his civil rights had been restored. When the trial judge called Mr. Rowell's case, Mr. Rowell told the trial judge directly that he had proof of the restoration of his civil rights and held up the document. Because the trial judge could not see the contents of the document, the trial judge instructed the assistant public defender to obtain a copy of that document so that the case could be resolved if Mr. Rowell was indeed permitted to possess a firearm. On the videotape of this event, Mr. Rowell can be seen handing the document to the assistant public defender at the jail. It is not clear what the assistant public defender who received the document did with it *769 after this hearing. At the time of trial, the assistant public defender could not remember following up on the judge's instructions.
The first appearance judge, concerned that Mr. Rowell might be wrongfully charged, ordered that Mr. Rowell's case be placed on the docket for review on Tuesday, July 11, four days later. This hearing never occurred. According to the assistant public defenders involved in this case, they took no responsibility in keeping track of these types of hearings; instead, they traditionally relied exclusively upon the clerk of the court to properly document and schedule them. It appears that the clerk in this case mistakenly noted that the hearing would be held on July 15, a Saturday on which no hearings were held. Although hearings presumably occurred before this judge with the participation of assistant public defenders on July 11, Mr. Rowell's case was not addressed. As a result, Mr. Rowell remained in jail past July 11 and July 15.
Meanwhile, through the natural process of opening files, Mr. Rowell's case was assigned to a third assistant public defender. This attorney first reviewed the file on July 12, 1995. The file did not contain the document indicating Mr. Rowell's civil rights had been restored or any notation that a hearing had been scheduled. The assistant public defender therefore gave the case no particular priority, but scheduled his first visit with Mr. Rowell at the jail on July 18, 1995. Once this assistant public defender met with Mr. Rowell on July 18, and Mr. Rowell provided the attorney with yet another copy of the document restoring Mr. Rowell's civil rights, the assistant public defender was able to obtain Mr. Rowell's release from jail within two days. The charges against Mr. Rowell were ultimately dismissed.
Mr. Rowell filed a legal malpractice action against the Office of the Public Defender. At trial, he contended that the assistant public defenders handling his case were negligent, because he presented them with a document that could have secured his immediate release, yet it took them over ten days to do so. As a result, he requested damages including his lost earning capacity and damages for his "loss of liberty," including the mental anguish, inconvenience, and embarrassment caused by his unnecessarily extended incarceration.
Throughout the trial, counsel for the Office of the Public Defender sought to limit Mr. Rowell's recovery to his economic damages because Mr. Rowell had not suffered any impact or physical injury as a result of his incarceration. The trial judge rejected this argument and held that the "impact rule" did not apply in this context. During the charge conference for the jury instructions, this issue was addressed again because there was no standard jury instruction discussing noneconomic damages in a legal malpractice case. To fill this gap, the trial judge used an instruction derived from the standard jury instruction for malicious prosecution. See Fla. Std. Jury Instr. (Civ.) MI 5.2(a). See also Fla. Std. Jury Instr. (Civ.) MI 6.1(j) (allowing the adaptation of the instruction for damages for malicious prosecution to instructions for false imprisonment).
The jury found that the assistant public defenders were negligent, and their negligence caused Mr. Rowell to suffer certain damages. They awarded Mr. Rowell $504 for his loss of earning capacity and $16,500 for his mental anguish, pain, and suffering. After the verdict, the Office of the Public Defender filed a motion for judgment notwithstanding the verdict, again challenging the award of noneconomic damages as a violation of the impact rule. The trial *770 court denied this motion and entered a final judgment in favor of Mr. Rowell in accordance with the jury's verdict.
We affirm without further comment the jury's finding of liability because it was supported by competent, substantial evidence. Based upon the current state of the law in Florida, however, we reverse the award of noneconomic damages, i.e., the emotional or psychological damages associated with Mr. Rowell's loss of liberty. We conclude that the current state of the law requires us to apply the impact rule to this case to preclude those damages, though we do so with some misgivings.
The impact rule is a doctrine intended to limit a plaintiff's recovery in negligence for damages that are purely emotional or psychological. As first applied in Florida, the impact rule prohibited a plaintiff from recovering for purely psychological or emotional damages in a negligence action in the absence of some direct physical impact caused by the defendant's negligence, or proof that the defendant's actions reflected willfulness, wantonness, or malice. See Crane v. Loftin, 70 So.2d 574 (Fla.1954). Because the strict application of the rule could work injustices in certain cases, the Florida Supreme Court modified the rule and created specific, limited exceptions to its application. In Champion v. Gray, 478 So.2d 17 (Fla. 1985), the supreme court modified the rule to allow recovery for emotional or psychological damages when the plaintiff suffered death or a significant discernible physical injury caused by the psychological trauma resulting from witnessing the injury or death of a close family member caused by the negligence of the defendant.[1] Since Champion, the supreme court has recognized other specific situations in which the rule does not apply. See Tanner v. Hartog, 696 So.2d 705, 708 (Fla.1997) (refusing to apply the impact rule in an action for emotional damages resulting from the birth of a stillborn child because of the defendant's negligence); Kush v. Lloyd, 616 So.2d 415 (Fla.1992) (holding that the impact rule does not apply to the tort of wrongful birth; noting that the impact rule does not generally apply in recognized torts where the damages are predominately emotional, such as defamation or invasion of privacy).
Although the supreme court has created limited exceptions to the impact doctrine, it has continually reaffirmed the principles espoused by the doctrine and denied numerous requests to abolish the rule. See R.J. v. Humana of Fla., Inc., 652 So.2d 360, 362 (Fla.1995); Doyle v. Pillsbury Co., 476 So.2d 1271 (Fla.1985); Gilliam v. Stewart, 291 So.2d 593 (Fla.1974). Instead, the supreme court has engaged in a case-by-case analysis to determine whether the policies underlying the rule support the rule's application in a particular case.
There are numerous reasons cited to support the continued application of the *771 impact rule. At its heart "[t]he impact doctrine gives practical recognition to the thought that not every injury which one person may by his negligence inflict upon another should be compensated in money damages." Zell v. Meek, 665 So.2d 1048, 1051 (Fla.1995) (quoting Stewart v. Gilliam, 271 So.2d 466, 477 (Fla. 4th DCA 1972) (Reed, J., dissenting)). In this light, the rule reflects an analysis based upon the traditional negligence concept of duty. See W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 54, at 359-67 (5th ed.1984) (discussing the impact rule and the zone of danger rule under the heading of "Limited Duty"). That is, should the duty a person owes to another be extended beyond the traditional duty not to inflict bodily harm or property damage to encompass a duty to avoid psychological or emotional harm to another. The application of the impact rule in this context is seen most clearly in the application of the rule to cases asserting a claim simply for negligent infliction of emotional distress, the "fright" cases. See Doyle, 476 So.2d 1271 (involving a plaintiff seeking damages for the fright caused by discovering a large insect floating in a can of peas); R.J., 652 So.2d 360 (involving a plaintiff seeking damages for the fright occasioned when a doctor mistakenly diagnosed him as HIV positive). Doyle and R.J. encompass a policy determination that a person should not be held liable for every emotional injury that may result from his or her negligence.[2]
Given that the traditional concept of duty in negligence depended heavily upon foreseeability, see, e.g., Palsgraf v. Long Island R. Co., 248 N.Y. 339, 162 N.E. 99 (1928), the application of the impact rule also reflects an understanding that the defendant should be able to foresee the risk involved. Thus, the Pillsbury Company may be held to foresee that the ingestion of a certain bug may cause physical harm, but they are not held to foresee that Mrs. Doyle will fall over her chair in fright simply upon seeing the bug floating in her can of peas. Doyle, 476 So.2d 1271. In contrast, the negligent driver who killed Ms. Champion's daughter may be held to foresee that Ms. Champion may suffer an injury resulting from the trauma of witnessing that tragic event. Champion, 478 So.2d 17.
Other policy reasons for the rule cited in Florida cases include the fear of fraudulent claims; the difficulty of proving (or disproving), and quantifying emotional or psychological damages; the difficulty of proving (or disproving) the cause of emotional or psychological injury; and the possibility of a flood of litigation based upon purely emotional harm. See, e.g., R.J., 652 So.2d at 362; Gonzalez v. Metro. Dade County Pub. Health Trust, 651 So.2d 673, 675 (Fla.1995). Prosser dismisses many of these concerns, but adds to them two others, again tied to the concept of defining duty: (1) the problem of permitting legal redress for harm that is often temporary and relatively trivial, and (2) the perceived unfairness of imposing heavy and disproportionate financial burdens upon a defendant whose conduct was only negligent for consequences which appear remote from the wrongful act. W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 54, at 360-61.
In the case before us, Mr. Rowell argues that the impact rule should not bar *772 his claim for emotional damages, or "loss of liberty" damages, resulting from the legal malpractice of the Office of the Public Defender. In reviewing the policy reasons behind the impact rule, we tend to agree. There is no question that the Office of the Public Defender established an attorney-client relationship with Mr. Rowell, and thus owed to Mr. Rowell a duty to exercise the degree of reasonable knowledge and skill that lawyers of ordinary ability and skill possess and exercise. See Home Furniture Depot, Inc. v. Entevor AB, 753 So.2d 653 (Fla. 4th DCA 2000). Because this was a criminal matter subjecting Mr. Rowell to confinement, it was foreseeable that the neglect of such a duty could cause a loss of liberty and attendant emotional and psychological harm. In our estimation, this case is similar to Tanner, 696 So.2d 705, and Kush, 616 So.2d 415, in that the emotional damages are a "parasitic" consequence of conduct that itself is a freestanding tort.[3] In other words, there is a clearly defined duty due to the direct relationship between the attorney and client that, if breached, presents a substantial risk of emotional or psychological harm. Under these circumstances, the application of the impact rule deprives Mr. Rowell of any real remedy for the malpractice of his attorney, despite the duty owed and breached and the foreseeability of the damages caused. See, e.g., Tanner, 696 So.2d at 708 ("It is difficult to justify the outright denial of a claim for the mental pain and anguish which is so likely to be experienced.").[4] As a practical matter, this result also insulates criminal defense attorneys from all but nominal damage awards[5] when their negligence results in the extended incarceration of their client, absent proof that their dereliction was willful, wanton, or malicious.[6]
Nevertheless, we believe precedent requires us to apply the impact rule in this case, absent some recognized exception. In Tanner, 696 So.2d 705, the supreme court reaffirmed the continued viability of the rule and noted that any exceptions to the rule must be considered on a case-bycase basis. If a new exception to the impact rule is to be drafted, we believe the supreme court is the most appropriate *773 body to do so. See, e.g., Gracey v. Eaker, 747 So.2d 475 (Fla. 5th DCA 1999), review granted, 760 So.2d 946 (Fla.2000) (table) (concluding that precedent requires application of the impact rule to an action for psychotherapist's breach of confidentiality, but certifying a question on the applicability of the rule to the supreme court).[7] Therefore, we apply the rule in this case and reverse that portion of the judgment which awarded Mr. Rowell emotional or psychological damages for his loss of liberty. Recognizing the harsh result thus created, and because of our misgivings in applying the impact rule in this context, we certify to the Supreme Court of Florida the following question of great public importance:
DOES THE IMPACT RULE APPLY TO PROHIBIT THE RECOVERY OF NONECONOMIC DAMAGES IN A LEGAL MALPRACTICE CLAIM WHEN THE NEGLIGENCE OF A CRIMINAL DEFENSE ATTORNEY RESULTS IN A LOSS OF LIBERTY AND RESULTING EMOTIONAL OR PSYCHOLOGICAL HARM?
Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.
NORTHCUTT, A.C.J., and SALCINES, J., Concur.
NOTES
[1] In Florida, the combination of these two principles has been called the "impact rule" or "impact doctrine." This results in some confusion as to whether "impact" refers to a physical impact upon the plaintiff at the time of the accident, or the physical injury a plaintiff may suffer after psychological trauma. See, e.g., Reynolds v. State Farm Mut. Auto. Ins. Co., 611 So.2d 1294, 1296 (Fla. 4th DCA 1992) (describing the impact rule as "preclud[ing] the recovery of damages for negligent infliction of emotional distress unless the emotional distress arises directly from the physical injuries sustained by the plaintiff in the impact"). In fact, the latter analysis that requires the plaintiff manifest some physical injury as a result of the emotional trauma is commonly known as the "zone of danger" rule, as it requires the plaintiff to be within the "zone of danger" created by the defendant's negligence. See Davies, Direct Actions for Emotional Harm: Is Compromise Possible?, 67 Wash. L.Rev. 1, 8 (Jan.1992).
[2] Indeed, the impact rule has its most pure and practical application in cases involving a claim for the negligent infliction of emotional distress. These actions, by definition, seek to recover only emotional or psychological damages under general principles of negligence. They do not involve recognized independent torts such as invasion of privacy, medical or legal malpractice, or defamation.
[3] The existence of a freestanding tort explains the trial judge's inclination to treat the recoverable damages as similar to those in the torts of malicious prosecution or false imprisonment. Certainly, the damages suffered by Mr. Rowell are identical to the damages contemplated by those torts. However, these two torts might rationally be distinguished from the tort of legal malpractice. The tort of malicious prosecution avoids application of the impact rule because it requires a showing of malice. See, e.g., Rowen v. Holiday Pines Prop. Owners' Ass'n, 759 So.2d 13 (Fla. 4th DCA 2000). The tort of false imprisonment does not require malice, see Jackson v. Navarro, 665 So.2d 340 (Fla. 4th DCA 1995), but it is an intentional tort requiring proof of some level of intent to imprison or confine the plaintiff. See Foshee v. Health Mgmt. Assocs., 675 So.2d 957 (Fla. 5th DCA 1996).
[4] For a general discussion of an attorney's liability for emotional harm caused by his or her negligence, see Joseph J. Kelleher, An Attorney's Liability for the Negligent Infliction of Emotional Distress, 58 Fordham L.Rev. 1309 (May 1990).
[5] These awards would presumably compensate for only lost wages or lost earning capacity.
[6] We note that Mr. Rowell has charged the assistant public defenders with "simple" negligence. He has not alleged gross negligence or malice, and thus has not sought punitive damages. Similarly, he has not sought to hold the assistant public defenders involved personally liable. See § 768.28(9), Fla. Stat. (1995) (providing state officers, employees, and agents immunity for actions committed in the scope of employment that do not evince wanton or willful disregard or bad faith or malicious purpose). Likewise, our review of the record supports the jury's finding of simple negligence.
[7] Gracey v. Eaker, 747 So.2d 475 (Fla. 5th DCA 1999), raises many of the same issues presented here as to the proper application of the impact rule. In essence, Gracey concerns a complaint of professional malpractice involving an established duty, the breach of which is most likely to cause emotional, as opposed to physical damages. The supreme court has accepted review of Gracey, see Gracey v. Eaker, 760 So.2d 946 (Fla.2000) (table), and its outcome may significantly impact upon the resolution of this case.