750 So.2d 83 (1999)
COCA-COLA BOTTLING COMPANY, et al., Appellants/Cross-Appellees,
v.
Linda HAGAN and Dobie Hagan, et al., Appellees/Cross-Appellants.
No. 98-1463.
District Court of Appeal of Florida, Fifth District.
December 3, 1999.
Rehearing Denied January 7, 2000.
Raoul G. Cantero, III, Gregory A. Victor, and Jeffrey W. Blacher, of Adorno & Zeder, P.A., Miami, for Appellants/Cross-Appellees.
Russell S. Bohn, of Caruso, Burlington, Bohn Compiani, P.A., West Palm Beach, and Gary, Williams, Parenti, Finney, Lewis, *84 McManus, Watson & Sperando, P.A., Stuart, for Appellees/Cross-Appellants.
W. SHARP, J.
Florida Coca-Cola Bottling Company and Coca-Cola Enterprises, Inc. (Coca-Cola) appeal from money judgments rendered against them after a jury verdict, which awarded $25,000.00 (each) to Linda Hagan and Barbara Parker, inclusive of medical bills, and $8,000.00 to Willie Parker (Barbara Parker's husband) for loss of consortium. Hagan and the Parkers cross-appeal the trial court's granting of Coca-Cola's motion for remittitur, and reduction of the jury's award, from $75,000.00 plus medical expenses (each), to Hagan and Barbara Parker, and from $20,000.00 to Willie Parker.
This is a case of first impression in the State of Florida. It presents us with the legal issue of whether or not, in a negligence case, a plaintiff can recover damages for fear of contracting AIDS, where no physical damage or injury to the plaintiff is proven, and further, no contact with HIV infected materials by the plaintiffs is shown. Because we think the plaintiffs failed to prove a prima facie case allowing recovery under these circumstances, we reverse, and do not address nor reach the issues raised on cross appeal.
The record in this case is not factually disputed or complex. In September of 1992, Hagan went to a nearby store to buy soft drinks on her lunch hour. She purchased two Cokes and one Sprite and returned to Hastings Academy Day Care where she was working as a teacher. The day care center was owned and operated by Hagan's sister, Barbara Parker, in the small town of Hastings, which is near St. Augustine, Florida. It accommodates children ages two to twelve.
Hagan drank one Coke on the way back to the center. When she got to the center, Parker asked if she could have one of the drinks. Hagan gave her the other Coke. Parker broke the seal on the bottle and poured part of the contents into a cup and drank some. She remarked to Hagan that there was something wrong with the Coke, and she asked her to taste it. Hagan took a sip from the cup and agreed. Both women testified the Coke was flat. It appeared to have lost its carbonation, and it tasted like water.
Hagan took the bottle off Parker's desk and went into the bathroom to hold it up to the light. When she turned the bottle upside down, she could see something floating in the remaining liquid in the bottle. Both women testified it looked like a used condom, with oozy stringy stuff coming out of the top. Hagan testified she became nauseated. Both testified they became frightened for their health.
They telephoned the Health Department, but had received no response by the time the center closed. The following morning (a Saturday) they went to the emergency room of the local hospital, gave their statements of what happened (i.e., that there was an oozing condom in a Coke which they had injested) to a police officer, the nurses and doctors, and were given shots. They were also advised to go to the Health Department to get a test for HIV.
At the Health Department, Hagan and Parker were immediately tested for HIV, and proved negative. They were also interviewed by Health Department persons, questioned about their sexual practices and partners, and given a lecture about AIDS. Six months later Hagan and Parker were given a second HIV test, and both were negative. Neither has had a HIV test since then. Nor has either suffered any physical illness resulting from drinking the Coke from the cup, or from the emotional upset it caused them.
The Coke bottle and cup containing the remaining liquid Parker had poured out, were left in the day care center, on Barbara's desk over the weekend. They were later taken to Parker's house, sealed in evidence bags, and locked in a filing cabinet. There they remained until they were *85 delivered, about a week later, to an attorney Parker and Hagan had hired to represent them in a possible suit against Coca-Cola.
Neither the plaintiffs nor their attorney opened the sealed bags, or had the contents tested. However, on October 6, 1992, the plaintiffs' attorney turned the sealed bags over to an employee for Coca-Cola, for the purposes of testing. The employee signed a receipt which stated he had picked up sealed bags containing a Coke bottle with a condom inside. However, the employee testified he did not open the bags, and merely initiated the transport of the materials to Atlanta, Georgia, for examination.
Dr. Forrest Bayer, a Ph.D. chemist who was, at the time of the incident, the manager for Coca-Cola's Quality Assurance Department testified at trial. He received the evidence bags containing the Coke and other materials on Oct. 12, 1992, in Atlanta, and had them taken to the laboratory. He observed some brownish material floating in the Coke bottle near the neck. At first he thought it was a condom.
Dr. Bayer instructed a lab technician to pour the material out of the bottle into a beaker and to take photographs of each step. Dr. Bayer left the lab and was called back ten minutes later. Dr. Bayer observed a foreign object floating in a beaker and, upon visual inspection, determined it was a mold. He used metal forceps and removed it from the beaker, to examine it on a table.
It was a gelatinous mass, one-inch in diameter, semi-solid, tanish brown, and had a rubbery texture. He put a piece under a microscope, and saw the typical cellular structure common to mold. He did no further tests, such as a chemical analysis, because they were not warranted. He put the beaker and mold into a lab refrigerator, and testified items such as these remained locked in storage until any lawsuit involving them had concluded, as a matter of business practice.
At trial, Dr. Bayer produced a petre dish which he testified, contained remnants of the mold, although there was no identifying mark on the dish. He explained that over time this kind of mold dries up and shrinks in size because of its large water content. He also explained that this kind of mold can grow in beverages which have lost their carbonation. He said that given the date this particular Coke was bottled,[1] the heat in Florida, and other conditions which may have occurred prior to its purchase by Hagan, it was possible for the mold to grow in the bottle to its size and shape when discovered by Parker and Hagan.
He concluded that, to a "scientific certainty," the item floating in the Coke bottle was not a condom. He admitted on cross-examination, however, that he did not see the lab technician pour the Coke and item into the beaker. Parker, Hagan, and Willie Parker all testified they were certain they had seen a used condom floating in the Coke bottle. In addition, enlarged photographs of the Coke bottle with something floating in its contents, apparently taken by plaintiffs' attorney were admitted into evidence.
There was no medical or scientific evidence presented at trial that HIV was present in the Coke poured into the cup; nor that it was present in a condom, assuming the jury could have chosen to disregard Dr. Bayer's testimony. Further there was no medical or scientific evidence presented that HIV can be transmitted from a contaminated source in this manner, or that if it could be, how long a person who tasted the Coke, would be at risk for contracting AIDS. The trial judge ruled, based on case law from other jurisdictions, that the plaintiffs' recovery for emotional distress should be limited to the *86 time beginning with the plaintiffs' possible exposure to the disease (drinking part of the Coke), and ending with their negative HIV test results six months later. He concluded that after obtaining a negative HIV test result six months after possibly being exposed, the plaintiffs' fears and anxieties about contracting AIDS would not be reasonable, and that there is no scientific basis to substantiate their emotional upset beyond that point.[2]
There was testimony that both Hagan and Parker suffered emotional upset from drinking the Coke. Part of their distress was caused by their perception that the nurses and doctors at the emergency room, and other persons who heard of the incident, thought it was funny, and they felt embarrassed and humiliated. Parker was concerned that information about the incident could damage her day care business. Neither Parker nor Hagan told anyone about the incident outside of their immediate families, nor did they consult their medical doctors. Hagan mentioned it to her doctor "in passing" several months later, while she was having a general check up, but he found it unremarkable.
The plaintiffs' greatest upset was their fear and concern that they could, in the indefinite future or at least for the next several years, contract AIDS, an admittedly terrible and terminal disease. They testified this damaged their peace of mind, caused them trouble sleeping, and made them worry about the future. There was also testimony that Willie Parker observed his wife's and Hagan's emotional upset, and that the Coke incident had interfered with his marital relationship with Parker. But, there was no evidence the plaintiffs sought or needed professional counseling or suffered a mental illness which required medical attention as a result of the incident.
Coca-Cola moved for a directed verdict, renewed at close of the evidence, on the ground that based on Florida case law a plaintiff cannot recover for the negligent infliction of emotional distress, unless the emotional distress is caused by a physical injury the plaintiff suffered as a result of an impact. Although we have serious doubts that the plaintiffs established that the object in the Coke was a used condom, for purposes of this appeal, we will assume the jury could have made that finding.
Florida is among the minority of jurisdictions[3] that have retained the "impact" rule in negligence cases. See Zell v. Meek, 665 So.2d 1048 (Fla.1995); R.J. v. Humana of Florida, Inc., 652 So.2d 360 (Fla. 1995). As described by Justice Overton in the Humana case, that rule requires that "before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact." 652 So.2d at 362, quoting Reynolds v. State Farm Mutual Auto. Ins. Co., 611 So.2d 1294, 1296 (Fla. 4th DCA 1992). He explained that the impact rule is designed to close the floodgates to recovery for purely emotional distress damages, and assure that only valid claims for emotional or psychic damages will be permitted as a basis for recovery in negligence cases. In Humana, the court ruled that there could be no recovery for the plaintiff's emotional distress and medical care, after being mistakenly diagnosed as HIV positive, because there was no physical impact in that case and, in addition, no physical injury. The court said that the mental anguish, *87 hypertension, and loss of capacity for the enjoyment of life, were intangible mental injuries insufficient to meet the physical injury requirement. That is the extent of the plaintiffs' damages proven in this case.
Justice Overton noted in Humana that the court has dropped the impact requirement in a limited number of situations, but that case was not one of them,[4] nor is this one. However, in the case of contaminated food, he explained the impact requirement is met if a plaintiff ingests the food, citing Doyle v. Pillsbury Company, 476 So.2d 1271 (Fla.1985). In Doyle, the plaintiff was denied recovery because, although she observed a large insect floating on the surface of a can of peas, she did not ingest any of the can's contents. She jumped and fell over a chair when she saw what was in the can. She had sought recovery for the physical injuries she sustained in the fall. Recovery for the plaintiff's physical injuries was denied in that case because of lack of impact.
The appellees-plaintiffs in this case argue that Florida does not require proof of a physical injury in order to recover damages for emotional distress, where there is proof of an impact (however slight) or something like ingestion, which substitutes for it. This point is not entirely clear, from various statements in the Florida cases.
The appellees-plaintiffs point to the food contamination cases which were relied upon by Justice Overton in discussing the ingestion "equals" impact principle. It is clear however, that the emotional upset component in those cases was accompanied by proof of physical illness. In Food Fair Stores of Florida v. Macurda, 93 So.2d 860 (Fla.1957), the plaintiffs had consumed a substantial amount of canned spinach before discovering it was "adorned" with numerous segments of worms. They suffered immediate nausea, vomiting, abdominal pains, and diarrhea over a three day time span. The court affirmed a $3,000.00 joint award to the two plaintiffs, acknowledging the rule that damages will not be awarded for mental suffering absent physical injury. It obviously concluded the jury could have found that eating the worms caused the physical illness, not the mental shock experienced by the plaintiffs when they discovered them. Consistent with Food Fair, the case of Miami Coca Cola Bottling Co. v. Todd, 101 So.2d 34 (Fla.1958), simply requires that the plaintiff become ill from a "foreign substance" contained in a drink. Recovery of damages for mental pain or anxiety was not at issue in that case.
In Way v. Tampa Coca Cola Bottling Co., 260 So.2d 288 (Fla. 2d DCA 1972), a plaintiff was allowed to recover damages primarily for mental distress when he discovered a rat in a bottle from which he was drinking. He immediately became nauseated and vomited. The court ruled that the jury verdict for the plaintiff should be affirmed, acknowledging that most of the damages in that case were attributable to the mental distress suffered by the plaintiff upon finding a loathsome object in his drink. Way is close to the instant case. However, only Hagan became nauseated, and neither vomited or suffered other physical reactions. Further the damages sought to be proved in this case were for fear of contracting AIDS not because of the loathsomeness of the object itself.
In Waddell v. Shoney's Inc. 664 So.2d 1134 (Fla. 5th DCA 1995), a plaintiff consumed a cup of water which contained a chlorine cleaning solution. She suffered immediate physical illness, including vomiting. She went to an emergency room, and continued to experience diarrhea and vomiting the following day. She was also pregnant, and felt unusual fetal movement as well as pre-mature labor contractions. She suffered mental distress and anxiety for the welfare of her unborn child. This court upheld a substantial jury award, and recognized that a large part of it was for *88 emotional or mental damages. However, in that case there were physical illnesses established by the plaintiff's vomiting and premature labor contractions, over a substantial time interval. And further, the mental stressfear of losing her child was related to the physical symptoms caused by the contaminated drink. In the instant case, the plaintiffs suffered no comparable physical illness caused by the ingestion of Coke, and their mental stress arose out of fear of a disease they might get in the future, not their reaction to finding a nasty object in the Coke bottle.
There is one exceptional situation which the Florida Supreme Court carved out as not requiring proof of an impact, or proof of a physical injury in order to recover for emotional damages. In Tanner v. Hartog, 696 So.2d 705 (Fla.1997), the court indicated physical injury or impact are not elements of the cause of action for negligent still birth. In that case, the plaintiffs (parents) sought to recover damages for emotional distress caused by the defendant's negligence in handling the birth of their child, which resulted in its stillbirth. The court ruled that damages for emotional distress could be recovered in that situation. It characterized the existence of the mental anguish as being certain and clear, and "likely to be experienced by parents as a result of the birth of a still born child." 696 So.2d at 707. However, the court reaffirmed the impact rule in general as the law of this state, and restated it, as requiring proof that "the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact." 696 So.2d at 707. (emphasis supplied)
In Ruttger Hotel Corp. v. Wagner, 691 So.2d 1177 (Fla. 3d DCA 1997), the court appeared to require that the physical injury must result from the impact. In that case, the plaintiffs sued for negligent infliction of emotional distress when they were robbed in the defendant's hotel by a robber who entered their room and pushed them into the bathroom. The court ruled that no cause of action was proven in that case under the impact rule, because the plaintiffs suffered no physical harm resulting from an impact. It said the mere touching or pushing of the plaintiffs by the robbers was not an impact which caused the plaintiffs' a physical injury, and thus damages for emotional distress or stress were foreclosed.
With few exceptions, Florida cases apparently require that in addition to impact or some substitute therefor, in order to establish the tort of negligent infliction of emotional distress, the plaintiff must prove some kind of physical injury to recover damages for the emotional distress, whether the physical injury is a result of the impact or a result of the emotional distress which in turn was caused by the impact. See Zell; Gonzalez v. Metro. Dade County Public Health Trust, 651 So.2d 673 (Fla. 1995); Brown v. Cadillac Motor Car Division, 468 So.2d 903 (Fla.1985); Jordan v. Equity Properties & Dev. Co., 661 So.2d 1307 (Fla. 3d DCA 1995).
In Eagle-Picher Industries, Inc. v. Cox, 481 So.2d 517 (Fla. 3d DCA 1985), the court ruled that a plaintiff could recover damages for emotional distress arising from his fear of developing cancer, but it employed the analysis used in Florida. The court said that if a plaintiff establishes that an impact occurred, damages for emotional distress can be recovered if the distress stems from the incident during which the impact occurred. The court noted that because the plaintiff in that case did not prove physical manifestations of the emotional distress, he would be barred from recovery had there been no impact. This statement appears to give credence to the appellant-plaintiffs position in the instant case that proof of impact standing alone, may justify recovery of emotional distress damages. But it was dictum.
The court found in Eagle-Picher, that there was an impact (breathing asbestos). The court went on to expressly limit recovery for emotional distress stemming from the plaintiff's fear of getting cancer *89 in the future to plaintiffs who have actually received a physical injury (contracted asbestosis) and who, based on medical and scientific evidence, are at substantially greater risk of getting lung cancer in the future, than other people in the general population. See also Landry v. Florida Power & Light Corp., 799 F.Supp. 94 (S.D.Fla.1992), affirmed, 998 F.2d 1021 (11th Cir.1993). This result is consistent with decisions in other states.[5]
The view that in general, proof of physical injury is a necessary element to recover for emotional distress caused by negligent conduct is consistent with Restatement of Torts (Second) § 436A: "If an actor's conduct is negligent as creating an unreasonable risk of causing either bodily harm or emotional disturbance alone, without bodily harm or other compensable damages, the actor is not liable for emotional disturbance." And section 313 provides: "If an actor unintentionally causes emotional distress to another, he is subject to liability to the other for resulting illness or bodily harm if the actor (a) should have realized that his conduct involved an unreasonable risk of causing the distress, otherwise than by knowledge of the harm or peril of a third person; and (b) from facts known to him should have realized that the distress if it were caused, might result in illness or bodily harm." Both sections conclude that absent bodily harm there can be no recovery for negligently inflicted emotional distress.
Many other jurisdictions which have dropped the impact rule, still require proof of physical injury in order to recover for emotional distress caused by negligent conduct. See Hughes v. Moore, 214 Va. 27, 197 S.E.2d 214 (1973); Daley v. LaCroix, 384 Mich. 4, 179 N.W.2d 390 (1970); Hoard v. Shawnee Mission Med. Center, 233 Kan. 267, 662 P.2d 1214 (1983); Poole v. Alpha Therapeutic Corp., 698 F.Supp. 1367 (N.D. Ill.1988). But see Potter v. Firestone Tire and Rubber Co., 6 Cal.4th 965, 25 Cal.Rptr.2d 550, 863 P.2d 795 (1993); Murphy v. Abbott Labs., 930 F.Supp. 1083 (E.D.Pa.1996). The rationale is similar to the ones given for the impact rule: to restrict recovery for emotional distress claims to ones that can be graphically proven or established. Doe v. Surgicare of Joliet Inc., 268 Ill.App.3d 793, 205 Ill.Dec. 593, 643 N.E.2d 1200 (1994); 38 Am.Jur.2d, Fright and Shock, § 1, 2.; Comment Restatement of Torts (Second) § 436A. As noted above, the Florida Supreme Court has steadfastly refused to give up the impact rule for those reasons, and in most cases where it has dispensed with the impact rule, it has required proof of physical injury as a basis for recovery of emotional damages. Thus it is likely that in cases involving slight impact, such as ingestion, the court would require proof of physical injury as a means to prevent the bringing of speculative or false damage claims for emotional injury. Although we may not always agree, we are bound to follow the direction of the Florida Supreme Court.[6]
However, it is likely that the Florida Supreme Court will someday take the view that negligently subjecting a plaintiff to contact with the AIDS' virus, absent physical injury to the plaintiff, is sufficient to allow the plaintiff's mental distress damages for fear of contracting AIDS in the future, in a proper case. It could construe the contact as an "impact" or carve out a new exception to the impact rule. AIDS is a terminal and much feared disease, and negligently exposing a plaintiff to the virus would, as a matter of human experience, *90 "likely"[7] cause great anguish and stress to the person exposed, whether or not physical illness is also proven.[8] But this is not that case.
In fact, we have found no case in researching all of the states, that would permit recovery for fear of contracting AIDSemotional distress damages, based on a record like this one. The fear of AIDS cases in which recovery has been allowed for negligent infliction of emotional distress and upset alone, require as a threshold, a showing by the plaintiff that the fear is reasonable. The great majority of cases say this means the plaintiff must show that the virus was present, and that the contact between the material containing the virus and the plaintiff was a medically and scientifically accepted channel for the transmission of the disease.[9] A minority of courts hold that actual presence of HIV or AIDS need not be shown, if it is likely and probable to believe the virus was present, and there was a medically and scientifically accepted channel shown by which the plaintiff could have become infected.[10]
Neither standard was met in this case. The appellees failed to establish that the condom and material in the Coke were contaminated with HIV. Nor did they show that it was likely and probable that the virus was present. Only a very small percentage of the general population is HIV positive or has AIDS, and the mere presence of semen would not be enough.[11] The appellees also failed to show a medically and scientifically accepted channel for transmitting the disease.[12] Without such *91 showings or proofs, a plaintiff's fear of contracting AIDS is unreasonable as a matter of law and not a legally compensable injury.[13] As a matter of public policy, the allowance of such lawsuits without the threshold proofs discussed above could lead to an explosion of frivolous litigation,[14] opening as some courts say a "Pandora's box" of AIDS phobia claims.[15]
For the reasons stated in this opinion, we reverse the judgments appealed in favor of Hagan and Parker on the grounds that no cause of action was proven against the defendants. The judgment in favor of Willie Parker is also reversed because it is purely a derivative claim,[16] and must fall with the claim to which it is appended.
REVERSED.
PETERSON, J., concurs.
DAUKSCH, J., concurs specially with opinion.
DAUKSCH, J., concurring specially.
In my judicial infancy I wrote an opinion saying that the impact rule is illogical and unjust. Having achieved my judicial maturity, from my point of view anyway, I can more definitely say how right we were then in Champion v. Gray, 420 So.2d 348 (Fla. 5th DCA 1982).
If someone is injured emotionally then the person who causes the injury should answer for the tortious conduct and injury. The jury here found that appellees had proved their cases and that they suffered injuries as a result of the tortious behavior of appellant. It was undisputed that the ladies believed the offensive and noxious and potentially lethal foreign material was in the container. It was established that no one but appellant was responsible for the material having been in the container. It was evident and reasonable to believe that appellees were very concerned, fearful, upset, worried and suffered many other negative emotional impacts. They were impacted strongly emotionally. That is an injury. In fact, some emotional injuries never heal and persons are permanently hospitalized on account of emotional disturbances brought about by an outside impact. A respected body of medical experts have recognized an illness now called Post-Traumatic Stress Syndrome which after a war is suffered by soldiers who were exposed to the violence of the war. It was sometimes called "battle fatigue" after World War II and has been recognized at least since then. Thus, to say emotional injury is different from pure physical injury is not fair or right. The law must be fair and right. I would affirm the judgment, but given that the state of the law in Florida is still supporting the tired, old impact rule I am duty-bound to adhere to it and urge a change by the supreme court of Florida. We have been instructed by that court to leave it to them to make the necessary changes. Boulis v. Florida Dep't of Transp., 733 So.2d 959 (Fla.1999); Hoffman v. Jones, 280 So.2d 431 (Fla.1973). If appellees file a petition *92 for certiorari review in our supreme court, then they can outline for that court the status of the law in the many other states regarding the demise of the impact rule.
We certify to the supreme court of Florida the following question as being one of great public importance.
SHOULD THE IMPACT RULE BE ABOLISHED OR AMENDED IN FLORIDA?
W. SHARP, J., concurs in certification.
NOTES
[1] The parties stipulated at trial that the Coke was bottled by Florida Coca-Cola Bottling Company in May 1992 in Hollywood, Florida, and that at that time it was under the sole possession of Florida Coca-Cola Bottling Company.
[2] Although no medical or scientific testimony was elicited to justify the trial court's decision, many courts, with extensive footnotes to medical journals and the like, have reached the same conclusion. See Majca v. Beekil, 289 Ill.App.3d 760, 224 Ill.Dec. 692, 682 N.E.2d 253 (1st Dist.1997); Burk v. Sage Products Inc., 747 F.Supp. 285 (E.D.Pa.1990); Kerins v. Hartley, 27 Cal.App.4th 1062, 33 Cal. Rptr.2d 172 (2d Dist.1994); Brown v. NYC Health and Hospitals Corp., 225 A.D.2d 36, 648 N.Y.S.2d 880 (1996).
[3] Prosser and Keeton on Torts, § 54 Mental Disturbance 363 (5th ed.).
[4] 652 So.2d at 363.
[5] See 50 A.L.R.4th 13, Anno. (future disease or condition or anxiety relating thereto as element of recovery); Burns v. Jaquays Mining Corp., 156 Ariz. 375, 752 P.2d 28 (App.Ct. 1987); Devlin v. Johns-Manville Corp., 202 N.J.Super. 556, 495 A.2d 495 (1985)
[6] See Hoffman v. Jones, 280 So.2d 431 (Fla. 1973).
[7] Tanner v. Hartog, 696 So.2d 705 (Fla.1997).
[8] See Marchica v. Long Island RR Co., 31 F.3d 1197 (2d Cir.1994); Delay v. Delay, 707 So.2d 400 (Fla. 5th DCA 1998).
[9] Babich v. Waukesha Memorial Hospital, Inc., 205 Wis.2d 698, 556 N.W.2d 144 (App. Ct.1996); De Milio v. Schrager, 285 N.J.Super. 183, 666 A.2d 627 (1995); Kaufman v. Physical Measurements, Inc., 207 A.D.2d 595, 615 N.Y.S.2d 508 (3d Dept.1994); Doe v. Surgicare of Joliet, Inc., 268 Ill.App.3d 793, 205 Ill.Dec. 593, 643 N.E.2d 1200 (3d Dist.1994); Johnson v. West Virginia University Hospitals, Inc., 186 W.Va. 648, 413 S.E.2d 889 (1991); Russaw v. Martin, 221 Ga.App. 683, 472 S.E.2d 508 (1996); Reynolds v. Highland Manor, Inc., 24 Kan.App.2d 859, 954 P.2d 11 (1998); Majca v. Beekil, 289 Ill.App.3d 760, 224 Ill.Dec. 692, 682 N.E.2d 253 (1st Dist. 1997); Seimon v. Becton Dickinson & Co., 91 Ohio App.3d 323, 632 N.E.2d 603 (1993); Burk v. Sage Products, Inc., 747 F.Supp. 285 (E.D.Pa.1990); Montalbano v. Tri-Mac Enterprises of Port Jefferson, Inc., 236 A.D.2d 374, 652 N.Y.S.2d 780 (1997); Pendergist v. Pendergrass, 961 S.W.2d 919 (Mo.App.1998); Falcon v. Our Lady of Lake Hospital, 729 So.2d 1169 (La.App.1999); Kerins v. Hartley, 33 Cal.Rptr.2d 172 (Cal.App.2d Dist.1994); Hare v. State, 173 A.D.2d 523, 570 N.Y.S.2d 125 (2d Dept.1991); Brown v. NYC Health and Hospitals Corp., 225 A.D.2d 36, 648 N.Y.S.2d 880 (2d Dept.1996); Lubowitz v. Albert Einstein Medical Center, Northern Division, 424 Pa.Super. 468, 623 A.2d 3 (1993); Carroll v. Sisters of St. Francis Health Services, Inc., 868 S.W.2d 585 (Tenn.1993); Neal v. Neal, 125 Idaho 627, 873 P.2d 881 (App.Ct. 1993), affirmed in part, reversed in part, 125 Idaho 617, 873 P.2d 871 (1994); Funeral Services By Gregroy, Inc. v. Bluefield Comm. Hospital, 186 W.Va. 424, 413 S.E.2d 79 (1991); Brzoska v. Olson, 668 A.2d 1355 (Del.Supr.), affirmed in part, reversed in part, 668 A.2d 1355 (Del.Supr.1995); Doe v. Doe, 136 Misc.2d 1015, 519 N.Y.S.2d 595 (N.Y.Sup. 1987) K.A.C. v. Benson, 527 N.W.2d 553 (Minn.1995).
[10] See Marchica v. Long Island RR. Co., 31 F.3d 1197 (2d Cir.1994); Castro v. New York Life Ins., 153 Misc.2d 1, 588 N.Y.S.2d 695 (N.Y.Sup.1991); Blair v. Elwood Union Free Public Schools, 238 A.D.2d 295, 656 N.Y.S.2d 52 (2d Dept.1997); Bordelon v. St. Frances Cabrini Hospital, 640 So.2d 476 (La.App. 3d Cir.1994).
[11] See Babich v. Waukesha Memorial Hosp., Inc., 205 Wis.2d 698, 556 N.W.2d 144 (App. Ct.1996) (presence of needle not enough); Kaufman v. Physical Measurements, Inc., 207 A.D.2d 595, 615 N.Y.S.2d 508 (3d Dept.1994) (needle stick alone not enough); Reynolds v. Highland Manor, Inc., 24 Kan.App.2d 859, 954 P.2d 11 (1998) (contact with used condom, exposure to cut on hand insufficient); Seimon v. Becton Dickinson & Co., 91 Ohio App.3d 323, 632 N.E.2d 603 (1993) (needle stick alone insufficient).
[12] See Montalbano v. Tri-Mac Enterprises of Port Jefferson, Inc., 236 A.D.2d 374, 652 N.Y.S.2d 780 (2d Dept.1997) (eating french fries sprinkled with human blood not a channel for transmission); Brzoska v. Olson, 668 A.2d 1355 (Del.Supr.), affirmed in part, reversed in part, 668 A.2d 1355 (Del.Supr.1995) (patient had teeth extracted by dentist who had AIDS).
[13] 38 Am.Jur.2d, Fright, Shock, § 39; Bishop v. Mount Sinai Medical Center, 247 A.D.2d 329, 669 N.Y.S.2d 530 (1st Dept.1998); Babich v. Waukesha Memorial Hosp., Inc., 205 Wis.2d 698, 556 N.W.2d 144 (App.Ct.1996); Kaufman v. Physical Measurements, Inc., 207 A.D.2d 595, 615 N.Y.S.2d 508 (3d Dept.1994); Russaw v. Martin, 221 Ga.App. 683, 472 S.E.2d 508 (1996).
[14] Pendergist v. Pendergrass, 961 S.W.2d 919 (Mo.App.1998); Kerins v. Hartley, 27 Cal. App.4th 1062, 33 Cal. Rptr.2d 172 (2d Dist. 1994).
[15] Brzoska v. Olson, 668 A.2d 1355 (Del. Supr.), affirmed in part, reversed in part, 668 A.2d 1355 (Del.Supr.1995); Doe v. Doe, 136 Misc.2d 1015, 519 N.Y.S.2d 595 (N.Y.Sup. 1987).
[16] See ACandS, Inc. v. Redd, 703 So.2d 492 (Fla. 3d DCA 1997); St. Mary's Hosp., Inc. v. Phillipe, 699 So.2d 1017, 1024 (Fla. 4th DCA 1997); rev. granted, 718 So.2d 170 (Fla.1998).