804 So.2d 1234 (2001)
Linda HAGAN, et al., Petitioners,
v.
COCA-COLA BOTTLING CO., et al., Respondents.
No. SC00-287.
Supreme Court of Florida.
December 13, 2001.
Donald N. Watson and Linda L. Weiksnar of Gary, Williams, Parenti, Finney, Lewis, McManus, Watson & Sperando, P.A., Stuart, FL; and Russell S. Bohn of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, FL, for Petitioners.
Raoul G. Cantero, III and Gregory A. Victor of Adorno & Zeder, P.A., Miami, FL, for Respondents.
*1235 John G. Crabtree, Key Biscayne, FL, for The Academy of Florida Trial Lawyers, Amicus Curiae.
Tracy Raffles Gunn of Fowler, White, Gillen, Boggs, Villareal and Banker, P.A., Tampa, FL, for Florida Defense Lawyers' Association, Amicus Curiae.
ANSTEAD, J.
We have for review a decision from the Fifth District Court of Appeal in which the court certified a question to be of great public importance:

SHOULD THE IMPACT RULE BE ABOLISHED OR AMENDED IN FLORIDA?
Coca-Cola Bottling Co. v. Hagan, 750 So.2d 83 (Fla. 5th DCA 1999). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. Because we conclude that there was an impact here and the impact rule does not bar the claim, we rephrase the certified question:
DOES THE IMPACT RULE PRECLUDE A CLAIM FOR DAMAGES FOR EMOTIONAL DISTRESS CAUSED BY THE CONSUMPTION OF A FOREIGN SUBSTANCE IN A BEVERAGE PRODUCT WHERE THE PLAINTIFF SUFFERS NO ACCOMPANYING PHYSICAL INJURIES?
For reasons expressed below, we answer the certified question as rephrased in the negative and quash in part the decision below.

MATERIAL FACTS
The facts in this case are set out in the district court's opinion. See Coca-Cola Bottling Co. v. Hagan, 750 So.2d 83 (Fla. 5th DCA 1999). Those facts reflect that in September 1992, Linda Hagan and her sister Barbara Parker drank from a bottle of Coke which they both agreed tasted flat. Hagan then held the bottle up to a light and observed what appeared to her and Parker to be a used condom. Both women testified at trial that the condom they saw in the Coke had "oozy stringy stuff coming out of the top." Both women were distressed that they had consumed some foreign material and Hagan immediately became nauseated. Because of their concerns as to what they had consumed, the women went to a health care facility the next day and were given shots. The medical personnel at the facility told them they should be tested for HIVAIDS. They were then tested and informed that the results were negative. Both women were tested for HIV again six months later and the results were again negative.
The bottle was later delivered to Coca-Cola for testing. Coca-Cola's beverage analyst, Dr. Forrest Bayer, testified at trial that he, too, initially thought the object in the bottle was a condom. However, upon closer examination, he concluded that the object was a mold. See id. According to the court below:
At trial, Dr. Bayer produced a petre dish which he testified, contained remnants of the mold, although there was no identifying mark on the dish. He explained that over time this kind of mold dries up and shrinks in size because of its large water content. He also explained that this kind of mold can grow in beverages which have lost their carbonation. He said that given the date this particular Coke was bottled, the heat in Florida, and other conditions which may have occurred prior to its purchase by Hagan, it was possible for the mold to grow in the bottle to its size and shape when discovered by Parker and Hagan.
He concluded that, to a "scientific certainty," the item floating in the Coke bottle was not a condom. He admitted *1236 on cross-examination, however, that he did not see the lab technician pour the Coke and item into the beaker. Parker, Hagan, and Willie Parker all testified they were certain they had seen a used condom floating in the Coke bottle. In addition, enlarged photographs of the Coke bottle with something floating in its contents, apparently taken by plaintiffs' attorney were admitted into evidence.
Id. at 85 (footnote omitted). At the conclusion of the trial, the jury returned a verdict in favor of the plaintiffs, awarding $75,000 each to Hagan and Parker. The jury also awarded $20,000 to Willie Parker, Barbara Parker's husband, on his consortium claim. The trial court reduced the jury award to $25,000 each to Hagan and Parker and reduced Willie Parker's award to $8,000. Both sides appealed to the Fifth District Court of Appeal.
The district court concluded that the conflicting evidence presented at trial was sufficient to create a jury issue as to whether the foreign matter in the Coke bottle was, in fact, a condom: "Although we have serious doubts that the plaintiff established that the object in the Coke was a used condom, for purposes of this appeal, we will assume the jury could have made that finding." Id. at 86. However, the district court reversed the jury awards and concluded that under the case law concerning the "impact rule," Hagan and Parker had not established a claim because neither woman had suffered a physical injury.
Judge Dauksch concurred in the majority opinion because he felt duty-bound to adhere to the "impact rule." However, he expressed the view that the "impact rule" should be amended or abolished and further stated that absent the rule he would have affirmed the judgment below. Accordingly, he, with Judge Sharp concurring, certified the above question to this Court. See id. at 91-92 (Dauksch, J., specially concurring).

ANALYSIS
Hagan and Parker (hereinafter "appellants") assert that a person should not be barred from recovering damages for emotional distress caused by the consumption of a beverage containing a foreign substance simply because she suffered distress but did not suffer any additional physical injury at the time of consumption. Therefore, appellants contend that the "impact rule" should not operate to preclude relief under the circumstances of this case. We agree with appellants and hold that the impact rule does not apply to cases where a plaintiff suffers emotional distress as a direct result of the consumption of a contaminated beverage.

Impact Rule in Florida
We begin by acknowledging that although many states have abolished the "impact rule," several states, including Florida, still adhere to the rule.[1] This Court, while acknowledging exceptions, has accepted the impact rule as a limitation on certain claims as a means for "assuring the validity of claims for emotional or psychic damages." R.J. v. Humana of Florida, Inc., 652 So.2d 360, 363 (Fla. 1995); accord Tanner v. Hartog, 696 So.2d 705 (Fla.1997); Zell v. Meek, 665 So.2d *1237 1048 (Fla.1995); Gonzalez v. Metropolitan Dade County Public Health Trust, 651 So.2d 673, 674 (Fla.1995); Gilliam v. Stewart, 291 So.2d 593 (Fla.1974). Generally stated, the impact rule requires that before a plaintiff may recover damages for emotional distress, she must demonstrate that the emotional stress suffered flowed from injuries sustained in an impact. See R.J., 652 So.2d at 362. Notwithstanding our adherence to the rule, this Court has noted several instances where the impact rule should not preclude an otherwise viable claim.
For example, this Court modified the impact rule in bystander cases by excusing the lack of a physical impact. In such cases, recovery for emotional distress would be permitted where one person suffers "death or significant discernible physical injury when caused by psychological trauma resulting from a negligent injury imposed on a close family member within the sensory perception of the physically injured person." Champion v. Gray, 478 So.2d 17, 18 (Fla.1985); see also Zell v. Meek, 665 So.2d 1048 (Fla.1995) (reaffirming rule in bystander cases but rejecting temporal proximity requirement). We also have held that the impact rule does not apply to claims for intentional infliction of emotional distress, see Eastern Airlines, Inc. v. King, 557 So.2d 574 (Fla.1990), wrongful birth, see Kush v. Lloyd, 616 So.2d 415 (Fla.1992), negligence claims involving stillbirth, see Tanner v. Hartog, 696 So.2d 705 (Fla.1997), and bad faith claims against an insurance carrier, see Time Ins. Co. v. Burger, 712 So.2d 389 (Fla.1998).
In Tanner, the plaintiffs filed suit against their doctors and hospital for negligence in causing the stillbirth of their child. One of the claims sought damages for mental pain and anguish unaccompanied by any impact or physical injury resulting from the negligence which caused the stillbirth. 696 So.2d at 706. The trial court denied the claim for emotional damages and the district court affirmed.
On review, this Court recognized that "the primary obstacle in Florida to a cause of action for `negligent stillbirth' is the application of the impact rule." Id. at 707. In our analysis, however, we compared the case to a case involving wrongful birth wherein we had held that the impact rule does not apply. See id. at 708 (citing Kush v. Lloyd, 616 So.2d 415 (Fla.1992)). In Kush v. Lloyd, we explained:
However, we are not certain that the impact doctrine ever was intended to be applied to a tort such as wrongful birth. Prosser and Keeton state that the impact doctrine should not be applied where emotional damages are an additional "parasitic" consequence of conduct that itself is a freestanding tort apart from any emotional injury. W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 54, at 361-65 (5th ed.1984). The American Law Institute is in general accord. Restatement (Second) of Torts § 47 & § 47 cmt. b (1965). Obviously, the Lloyds have a claim for wrongful birth even if no emotional injuries had been alleged.
Similarly, the impact doctrine also generally is inapplicable to recognized torts in which damages often are predominately emotional, such as defamation or invasion of privacy. Restatement (Second) of Torts §§ 569, 570, 652H cmt. b (1977). This conclusion is entirely consistent with existing Florida law. For example, it is well settled that mental suffering constitutes recoverable damages in cases of negligent defamation, e.g., Miami Herald Publishing Co. v. Brown, 66 So.2d 679, 681 (Fla.1953), or invasion of privacy. See Cason v. Baskin, 155 Fla. 198, 20 So.2d 243 *1238 (1944). Accord Restatement (Second) of Torts §§ 569, 570, 652H, cmt. b (1977). If emotional damages are ascertainable in these contexts, then they also are ascertainable here.
616 So.2d at 422, quoted in Tanner, 696 So.2d at 708. In keeping with this reasoning and logic, we held in Tanner:
We recognize that there is a legitimate legal argument which can be directed against any particular theory upon which a recovery in the instant case might be predicated and that the law does not provide a remedy for every wrong. Yet, it is difficult to justify the outright denial of a claim for the mental pain and anguish which is so likely to be experienced by parents as a result of the birth of a stillborn child caused by the negligence of another. As a natural evolution of the common law, we conclude, as in Kush, that public policy dictates that an action by the parents for negligent stillbirth should be recognized in Florida.
696 So.2d at 708. To further explain our holding, we also noted Justice Alderman's comment in Champion v. Gray on the need for flexibility in the application of the impact rule:
We today modify to a limited extent our previous holdings on the impact doctrine. In doing so, however, we are unable to establish a rigid hard and fast rule that would set the parameters for recovery for psychic trauma in every case that may arise. The outer limits of this cause of action will be established by the courts of this state in the traditional manner of the common law on a case-by-case basis.
Tanner, 696 So.2d at 708 n. 5 (quoting Champion v. Gray, 478 So.2d 17, 21-22 (Fla.1985) (Alderman, J., concurring specially)).
We believe that public policy dictates the same result here as we reached in Tanner, in that a cause of action for emotional distress caused by the ingestion of a contaminated food or beverage should be recognized despite the lack of an accompanying physical injury. In Doyle v. Pillsbury Co., 476 So.2d 1271 (Fla.1985), for example, this Court observed that the impact rule would not bar a cause of action for damages caused by the ingestion of a contaminated can of peas. There, the plaintiffs, Mr. and Mrs. Doyle, opened a can of peas and observed an insect floating on top of the contents. Mrs. Doyle jumped back in alarm, fell over a chair and suffered physical injuries. The plaintiffs sued the Pillsbury Company, Green Giant Company, and Publix Supermarkets, alleging negligence, strict liability, and breach of warranty. The trial court granted summary judgment in favor of the defendants, finding that the impact rule barred the plaintiffs' cause of action, and the district court affirmed.
On review, this Court approved the outcome but disapproved of the application of the impact rule. We initially recognized that ingestion of a food or drink product is a necessary prerequisite to a cause of action against restaurants, manufacturers, distributors and retailers of food. In doing so, we impliedly found that ingestion of a food or beverage containing a foreign substance constitutes an "impact":
Claims for injuries caused by foreign objects in food or drink led to the adoption of liability predicated on an implied warranty of fitness without regard to privity where a consumer suffers injury from unwholesome food. This Court first applied the breach of implied warranty theory to food manufacturers or packers, to restaurants, and to retailers of food products[.] Even with these liberalized rules to promote recovery for physical and psychic injury, the foreign *1239 object cases all involve some ingestion of a portion of the food or drink product. To this extent Florida courts have required an "impact."
This ingestion requirement is grounded upon foreseeability rather than the impact rule. The public has become accustomed to believing in and relying on the fact that packaged foods are fit for consumption. A producer or retailer of food should foresee that a person may well become physically or mentally ill after consuming part of a food product and then discovering a deleterious foreign object, such as an insect or rodent, in presumably wholesome food or drink. The manufacturer or retailer must expect to bear the costs of the resulting injuries.

The same foreseeability is lacking where a person simply observes the foreign object and suffers injury after the observation. The mere observance of unwholesome food cannot be equated to consuming a portion of the same. We should not impose virtually unlimited liability in such cases. When a claim is based on an inert foreign object in a food product, we continue to require ingestion of a portion of the food before liability arises. Because Mrs. Doyle never ingested any portion of the canned peas, the trial court properly granted summary judgment against the Doyles.
Id. at 1271-72 (citations and footnote omitted) (emphasis added). Hence, we concluded that ingestion was a critical factor in our foreseeability analysis, but the "mere observance of unwholesome food cannot be equated to consuming a portion of the same." Id. at 1272.
Coca-Cola argues that Doyle is not dispositive to the issue in this case because (1) this Court did not discuss whether ingestion alone is sufficient to establish liability and (2) the plaintiffs in that case suffered a physical injury upon discovering the insect. We disagree with Coca-Cola for two reasons.
First, our opinion in Doyle very clearly states that the impact rule did not bar the plaintiffs' claim against the defendants. Rather, their lack of ingestion stood as the sole bar to their claims for relief. Second, although the facts in Doyle indicate that the plaintiffs may have suffered physical injuries upon observing the contaminated food, nothing in Doyle suggests that to recover damages, a plaintiff must also show physical injuries stemming from either the ingestion of the contaminated food or beverage itself or from the emotional distress suffered as a result of consuming the contaminated food or beverage. Moreover, any discussion as to the requirement for a physical injury would have been unnecessary based upon our holding that the impact rule did not apply. Thus, our holding in Doyle is consistent with our conclusion today, namely, that the impact rule does not apply to cases involving the ingestion of contaminated substances.
Other jurisdictions have reached a similar conclusion, one, in fact, involving virtually the same facts presented here. In Wallace v. Coca-Cola Bottling Plants, Inc., 269 A.2d 117 (Me.1970), the plaintiff drank from a Coke bottle which contained an unwrapped condom. The plaintiff became ill after he returned home and thought about his experience. The Maine Supreme Court held that where the plaintiff demonstrates a causal relationship between the negligent act and the reasonably foreseeable mental and emotional suffering by a reasonably foreseeable plaintiff, damages for emotional suffering are recoverable despite the lack of a "discernable trauma from external causes." Id. at 121. The court found that such requirements had been met:

*1240 In the case at hand such proximate cause relationship was established. The jury found that the defendant negligently caused or permitted a foreign object to enter a bottle of Coca-Cola it had processed. The foreign object was of such a loathsome nature it was reasonably foreseeable its presence would cause nausea and mental distress upon being discovered in the place it was by a consumer who was in the process of drinking from the bottle. The mental distress was manifested by the vomiting.
Id. at 121-22. Several years later, the Maine Supreme Court overruled Wallace to the extent that it had required a plaintiff to demonstrate actual physical manifestations of the mental injury. See Culbert v. Sampson's Supermarkets Inc., 444 A.2d 433 (Me.1982). The court in Culbert reasoned:
We now reject the notion that the plaintiff must allege or prove physical injuries or physical manifestations of the distress, as required by Wallace, supra, as well as emotional and mental trauma, in order to prevail. We do so for three reasons. First, the requirement in its application is overinclusive since it permits recovery for demonstrably trivial mental distress claims accompanied by physical symptoms. Second, it is underinclusive since serious distress is arbitrarily deemed not compensable if not accompanied by physical symptoms. Third, such a rule "encourages extravagant pleading and distorted testimony." Molien v. Kaiser Foundation, 27 Cal.3d 916, 929, 167 Cal.Rptr. 831, 838, 616 P.2d 813, 820 (1980). Given the state of modern medical science, we can safely conclude that proof of "objective symptomatology" is no longer necessary, although it may be highly persuasive evidence, to establish mental distress. Sinn v. Burd, 404 A.2d at 679.
Culbert, 444 A.2d at 437. In overruling any physical injury requirement, the court noted that it could have permitted recovery in Wallace even under the impact rule because the condom had come in contact with the plaintiff. See id. at 436. Therefore, it viewed Wallace's foreseeability requirement as obiter dictum.
We find the reasoning of the Maine Supreme Court to be instructive, and consistent with our analysis in Doyle, to the extent it concludes that a plaintiff may recover for emotional injuries caused by the consumption of a contaminated food or beverage despite the lack of an additional physical injury.

Florida Cases
As the district court pointed out, there have been a variety of other ingestion cases in Florida, although none that appear to have definitively resolved the issue. In Food Fair Stores of Florida, Inc. v. Macurda, 93 So.2d 860 (Fla.1957), for example, the plaintiffs ingested a can of spinach containing worms. Upon discovering the worms, the plaintiffs immediately vomited and suffered nausea, abdominal pains and diarrhea. This Court held that the impact rule did not bar the plaintiffs' recovery because the jury could have reasonably concluded that the plaintiffs' physical injuries resulted from eating the worms and not from any psychogenic reaction to the same. See id. at 861-62. This Court's decision in Miami Coca Cola Bottling Co. v. Todd, 101 So.2d 34 (Fla.1958), also affirmed an award of damages which involved ingestion from a soda bottle containing a foreign substance, but our opinion did not explicitly address the issue of emotional or physical injuries.
In Way v. Tampa Coca Cola Bottling Co., 260 So.2d 288 (Fla. 2d DCA 1972), the plaintiff drank from a bottle of soda and then, upon discovering a rat in the bottle, became nauseous and vomited. Plaintiff *1241 sued Coca-Cola, who defended on the basis that damages were not recoverable in the absence of a distinct physical injury. The Second District held that the lack of a physical impact from external causes would not bar a cause of action for damages where there is a proximate causal relationship between the negligent act and reasonably foreseeable emotional suffering by a reasonably foreseeable plaintiff.[2]See id. at 290. The court reasoned that recovery should be permitted because the evidence showed that the foreign substance in the bottle was loathsome, that it was reasonably foreseeable that its presence would cause nausea and mental distress, and the mental distress was evidenced by the vomiting. See id. However, the court refrained from "express[ing] an opinion in those cases where there is neither physical impact nor any objective physical symptom such as vomiting which is present in the instant case." Id.
Similarly, in Waddell v. Shoney's, Inc., 664 So.2d 1134 (Fla. 5th DCA 1995), the Fifth District upheld a jury verdict in favor of a pregnant plaintiff who drank water contaminated with a chlorine cleaning solution. The plaintiff became ill and began vomiting. The plaintiff also experienced fetal movement and contractions and feared for the safety of the fetus. The court affirmed the plaintiff's recovery and also held that the trial court properly admitted evidence that plaintiff suffered mental distress related to the concern for the fetus. See id. at 1136-37.
Thus, while these decisions address a variety of circumstances arising out of actions based on consumption of a contaminated food product, none address the particular issue raised herein. For this reason, none of these cases are dispositive.

CONCLUSION
As this Court recognized in Tanner, the impact rule does not apply where emotional damages are a "consequence of conduct that itself is a freestanding tort apart from any emotional injury." 696 So.2d at 708 (quoting Kush, 616 So.2d at 415). And, of course, Doyle recognized a cause of action based on the ingestion of a contaminated food since ingestion itself constitutes an impact. Consistent with our opinions and holdings in Tanner and Doyle, we hold that a plaintiff need not prove the existence of a physical injury in order to recover damages for emotional injuries caused by the consumption of a contaminated food or beverage. As this Court made clear in Doyle, those who market foodstuffs should foresee and expect to bear responsibility for the emotional and physical harm caused by someone consuming a food product that is contaminated by a foreign substance. Further, since we have concluded that there was an impact in the case at hand by the ingestion of a contaminated substance, and the impact rule does not bar the action, we decline to rule on the broader question posed by the district court's certified question.
Based on the foregoing reasons, we quash the decision below to the extent it holds that the impact rule precludes a claim for damages for emotional distress caused by the ingestion of a contaminated beverage,[3] and we remand to the district *1242 court for further proceedings consistent herewith.
It is so ordered.
SHAW, PARIENTE, LEWIS, and QUINCE, JJ., concur.
HARDING, J., dissents with an opinion.
WELLS, C.J., recused.
HARDING, J., dissenting.
I respectfully dissent. Neither the answer to the certified question nor the answer to the question rephrased by the majority will be determinative of this case. The court below held that, regardless of the impact rule or whether physical injury is required in order to recover for negligently inflicted emotional distress, the petitioners failed to establish the necessary threshold for their fear of contracting AIDS claim:
[W]e have found no case in researching all of the states, that would permit recovery for fear of contracting AIDS emotional distress damages, based on a record like this one. The fear of AIDS cases in which recovery has been allowed for negligent infliction of emotional distress and upset alone, require as a threshold, a showing by the plaintiff that the fear is reasonable. The great majority of cases say this means the plaintiff must show that the virus was present, and that the contact between the material containing the virus and the plaintiff was a medically and scientifically accepted channel for the transmission of the disease. A minority of courts hold that actual presence of HIV or AIDS need not be shown, if it is likely and probable to believe the virus was present, and there was a medically and scientifically accepted channel shown by which the plaintiff could have become infected.
Neither standard was met in this case. The appellees failed to establish that the condom and material in the Coke were contaminated with HIV. Nor did they show that it was likely and probable that the virus was present. Only a very small percentage of the general population is HIV positive or has AIDS, and the mere presence of semen would not be enough. The appellees also failed to show a medically and scientifically accepted channel for transmitting the disease. Without such showings or proofs, a plaintiff's fear of contracting AIDS is unreasonable as a matter of law and not a legally compensable injury. As a matter of public policy, the allowance of such lawsuits without the threshold proofs discussed above could lead to an explosion of frivolous litigation, opening as some courts say a "Pandora's box" of AIDS phobia claims.
Coca-Cola Bottling Co. v. Hagan, 750 So.2d 83, 90-91 (Fla. 5th DCA 1999) (footnotes omitted). By accepting this case and answering the rephrased question, the majority is issuing an advisory opinion. This Court may render advisory opinions only to the Governor and the Attorney General. See art. IV, § 1(c), art. V, § 3(b)(10), Fla. Const. See also Reinish v. Clark, 765 So.2d 197, 202 (Fla. 1st DCA 2000) ("`[E]very case must involve a real controversy as to the issue or issues presented,' so that `the parties must not be requesting an advisory opinion.'" (quoting Department of Revenue v. Kuhnlein, 646 So.2d 717, 720-21 (Fla.1994))).
NOTES
[1] Other states that continue to adhere to the "impact rule" include Indiana, see Shuamber v. Henderson, 579 N.E.2d 452 (Ind.1991), Kansas, see Anderson v. Scheffler, 242 Kan. 857, 752 P.2d 667 (1988), and Kentucky, see Deutsch v. Shein, 597 S.W.2d 141 (Ky.1980). For a good discussion of the history of the impact rule and the differing treatment of the rule among the states, see Mary Donovan, comment, Is the Injury Requirement Obsolete in a Claim for Fear of Future Consequences?, 41 UCLA L.Rev. 1337 (1994).
[2] Although the court acknowledged that it could hold that the impact rule would not bar recovery by virtue of the fact that the plaintiff had ingested the contents of the bottle, it chose to take the position that the case lacked impact. See id. at 289.
[3] We decline to address any other issues not pertinent to the certified question as posed by the District Court, or as we have rephrased it.